UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                                                                              :

PARAGON PET PRODUCTS EUROPE B.V.,    :

        Plaintiff,         :
      v.                         :    Civil Action No. 15-cv-5520
                            :
MARS, INC.,                :
        Defendant.        :
                            :
------------------------------------------------------------- x

# MEMORANDUM IN SUPPORT OF
# PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

                                                   HUGHES HUBBARD & REED LLP
                                                   One Battery Park Plaza
                                                   New York, New York 10004-1482
                                                   (212) 837-6000

                                                   Attorneys for Plaintiff
                                                 Paragon Pet Products Europe B.V.

James W. Dabney
Natasha N. Reed
Mitchell Epner
Julia Zousmer
Emma L. Baratta
Nathaniel L. Fintz
Laura Samuels

   *Of Counsel*

Dated: August 6, 2015

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---:|
| ARGUMENT | | 4 |
| (1) | Paragon Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief | 4 |
| (2) | Paragon Is Likely To Succeed on the Merits | 6 |
| | (i) The "#1 Vet Recommended Dental Claim" is Literally False | 6 |
| | (ii) The "#1 Vet Recommended Dental Claim" Misrepresents an Inherent or Material Quality of the Product | 8 |
| (3) | The Balance of Hardships Weighs in Favor of Preliminary Injunctive Relief: Mars Has No Legitimate Interest in False Advertising Statements | 9 |
| (4) | Public Interest Would Be Served by Preliminary Injunctive Relief | 10 |
| CONCLUSION | | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229 (10th Cir. 2013) ........................................ 3

*Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568 (S.D.N.Y. 1987)
(Conner, J.) ................................................................................................................................ 2

*Am. Tel. & Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421 (3d Cir. 1994) .......... 9

*Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424 (D.N.J.1992), *aff'd,* 987 F.2d 939 (3d Cir.
1993) ....................................................................................................................................... 10

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-CV-585, 2015
WL 4002468 (S.D.N.Y. Jul. 1, 2015) (Nathan, J.) ........................................................... *passim*

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d
30 (2d Cir. 2010) ....................................................................................................................... 4

*CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127 (E.D.N.Y. 2011) .................. 4, 5, 10

*Clinique Labs., Inc. v. Dep Corp.*, 945 F. Supp. 547 (S.D.N.Y. 1996) ........................................... 9

*Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60 (2d Cir. 2007) .................................... 5

*Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311 (2d Cir.
1987) ..................................................................................................................................... 7, 9

*Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844 (1982) ........................................................... 3

*Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70 (2d Cir. 1979) .................................. 4

*McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.,* 938 F.2d 1544 (2d Cir. 1991) ........................... 6

*Merck Eprova AG v. Brookstone Pharm., LLC,* 920 F. Supp. 2d 404 (S.D.N.Y. 2013) ................. 9

*Mylan Pharm., Inc. v. Procter & Gamble Co.,* 443 F. Supp. 2d 453 (S.D.N.Y. 2006) ................... 9

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) ..... 4, 5, 6, 10

*Novo Nordisk A/S v. Becton Dickinson & Co.,* 997 F. Supp. 470 (S.D.N.Y. 1998) ...................... 11

*ProFitness Phys. Therapy Ctr. v. Pro–Fit Ortho. and Sports Phys. Therapy P.C.*, 314
F.3d 62 (2d Cir. 2002) ............................................................................................................. 10

*Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304 (2d Cir. 1963) .................................... 3

*SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck
    Consumer Pharm. Co.*, 906 F. Supp. 178 (S.D.N.Y. 1995) (Baer, J.), *aff'd*, 100 F.3d
    943 (2d Cir. 1996)................................................................................................2, 7, 8, 10

*Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190 (S.D.N.Y. 1987)...............................7

*Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010) ..........................................................6, 9

*Time Warner Cable Inc. v. DIRECTV, Inc.*, 497 F.3d 144 (2d Cir. 2007) .......................................6

*Vidal Sassoon, Inc. v. Bristol-Meyers Co.*, 661 F.2d 272 (2d Cir. 1981) ........................................5

**STATUTES AND RULES**

Fed. R. Civ. P. 65(a) .........................................................................................................................1

Lanham Act § 43(a) ....................................................................................................................6, 11

New York General Business Law § 349........................................................................................11

New York General Business Law § 350........................................................................................11

Paragon Pet Products Europe B.V. ("Paragon") respectfully moves this Court, pursuant to Fed. R. Civ. P. 65(a), for a preliminary injunction requiring defendant Mars, Inc. ("Mars") to halt use of the advertising claim,"**#1 Vet Recommended Dental Chew**", as a purported description of GREENIES® dental chews sold in direct competition with WHIMZEES® dental chews that Paragon manufactures, markets, and sells in United States commerce.

The record now shows that the "**#1 Vet Recommended Dental Chew**" claim is literally false.  *See* Declaration of Emma Baratta, sworn to August 5, 2015 ("Baratta Decl.") ¶ 3 & Ex. 1.

So how can it be that GREENIES® is advertised and represented to consumers as being the "**#1 Vet Recommended Dental Chew**" when, in fact, Mars's own documents show that this statement is false? The explanation, Mars now says, is the inscrutable footnote which appears in tiny type on the back panels of GREENIES® retail packaging: "In pet specialty stores among U.S. veterinarians that recommend dental chews for at-home oral care" (the "Footnote") (D.I. 3, Ex. 3 at 3, 5). The Footnote, Mars says, purportedly excludes ▓▓▓▓▓▓▓▓ from the universe of "vet recommended dental chews" that the "**#1 Vet Recommended Dental Chew**" claim refers to, because ▓▓▓▓▓▓▓▓ allegedly are not sold in so-called "pet specialty stores." (*See* Transcript of July 28, 2015 Conference ("7/28/15 Tr.") at 20:15-21:6.

That is to say, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ according to Mars's own veterinarian survey data, but the product is nevertheless represented to consumers as

purportedly being the "**#1 Vet Recommended Dental Chew**" on the basis of the Footnote whose text purportedly excludes[1] the brand that actually is the **#1 Vet Recommended Dental Chew**. A more open and shut case of consumer fraud is difficult to imagine. No extended analysis is needed in order to determine that Paragon's prayer for preliminary injunctive relief should be granted and Mars required to halt use of the "**#1 Vet Recommended Dental Chew**" forthwith.

"[A]s many courts have found, 'a footnote or disclaimer that "purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims."'" *Church & Dwight Co. v. SPD Swiss Precision Diagnostics GmbH*, No. 14-CV-585, 2015 WL 4002468 at *19 (S.D.N.Y. Jul. 1, 2015) (Nathan, J.) (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Johnson & Johnson-Merck Consumer Pharm. Co.*, 906 F. Supp. 178, 182 (S.D.N.Y. 1995) (Baer, J.), *aff'd*, 100 F.3d 943 (2d Cir. 1996) (quoting *Am. Home Prods. Corp. v. Johnson & Johnson*, 654 F. Supp. 568, 590 (S.D.N.Y. 1987) (Conner, J.))). This principle is controlling and dispositive here.

The record now shows that Mars relies on an inconspicuous and inscrutable footnote to contradict the apparent meaning of the "**#1 Vet Recommended Dental Chew**" claim, which claim literally refers to all veterinarians and all dental chews without qualification. This literal falsity is itself sufficient to warrant issuance of preliminary injunctive relief; but in an abundance of caution Paragon has commissioned a survey of consumer perceptions of GREENIES product packaging which bears the statement, "**#1 Vet Recommended Dental Chew**". D.I. 9 (Declaration of Robert L. Klein, sworn to July 20, 2015 ("Klein Decl.")). The survey evidence shows that more than 37% of relevant dental dog chew consumers understand the Mars "**#1 Vet**

---

[1] Mars has not yet produced any substantiation of it apparent contention, made on the record of the July 28 hearing, that ▆▆▆▆▆▆▆▆ are not available in any "pet specialty stores."

**Recommended Dental Chew**" claim to mean that more veterinarians recommend GREENIES® dental dog chews than any other brand of dental dog chew. *Id*. at ¶ 8. That is the message that Mars plainly intends the "**#1 Vet Recommended Dental Chew**" to convey, and it is false and fraudulent. "Lanham Act jurisprudence soundly presumes that consumers are in fact deceived if an advertiser sets out to deceive them." *Church & Dwight*, 2015 WL 4002468 at *12 (Nathan, J.).

Mars is legally responsible for acts of false advertising that it profits from, has the ability to stop, and chooses not to stop. *See, e.g., Inwood Labs., Inc. v. Ives Labs., Inc.,* 456 U.S. 844, 854 (1982); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1252, 1254 (10th Cir. 2013); *Shapiro, Bernstein & Co. v. H.L. Green Co.*, 316 F.2d 304, 307-09 (2d Cir. 1963). False advertising of GREENIES® dental chews directly and proximately injures Paragon's United States sales of WHIMZEES® dental chews and does so in ways that are impossible to quantify exactly (Kunst Decl. ¶ 10), a paradigmatic form of irreparable harm. False advertising of GREENIES® dental chews is also injurious to consumers and contrary to the public interest.

An applicant for preliminary injunctive relief must show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.,* 598 F.3d 30, 35 (2d Cir. 2010 (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979)). Paragon has made that showing here.

The preliminary injunction sought by Paragon would merely require Mars to halt use of the "**#1 Vet Recommended Dental Chew**" claim and to provide retailers with a copy of the Court's preliminary injunction order and with gummed stickers or other materials suitable for

covering or obscuring the **"#1 VET RECOMMENDED DENTAL CHEW**" claim as it appears on existing stocks of GREENIES dental chew products or promotional or point of sale materials or displays that retailers may have on hand, similarly to what Judge Rakoff ordered in *North American Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 518 (S.D.N.Y. 2013). This limited relief would minimize waste and permit sale of existing GREENIES product but would relieve Paragon of an unfair competitive disadvantage it is experiencing in competition with Mars in the marketplace every day.

## ARGUMENT

**(1)** <u>**Paragon Will Suffer Irreparable Harm Absent Preliminary Injunctive Relief**</u>

In cases where product advertising is literally false, the Second Circuit has "never required a finding of extrinsic evidence of injury to consumers or to the plaintiff." *Church & Dwight*, 2015 WL 4002468, at *25 (S.D.N.Y. July 1, 2015) (Nathan, J.) (modification in original) (internal citation and quotation mark omitted). Instead, a plaintiff need only "show two things: (i) that the parties are competitors in the relevant market, and (ii) that there is a logical causal connection between the alleged false advertising and its own sales position." *N. Am. Olive Oil Ass'n*, 962 F. Supp. at 518 (quoting *CJ Prods. LLC v. Snuggly Plushez LLC*, 809 F. Supp. 2d 127, 149 (E.D.N.Y. 2011)). Paragon has made this showing.

Paragon manufactures, markets, and sells WHIMZEES® dental chews in United States commerce including to New York distributors which also carry GREENIES® dental chews. *See* Kunst Decl. ¶¶ 3, 5, 11. It is undisputed that WHIMZEES® and GREENIES® are directly competitive products and that the "**#1 Vet Recommended Dental Chew**" claim is designed and intended to induce consumers to buy GREENIES® instead of other brands because GREENIES® purportedly is the "**#1 Vet Recommended Dental Chew**". *Id.* at ¶ 9. *Cf. N. Am. Olive Oil Ass'n,* 962 F. Supp. 2d at 518 (Rakoff, J.) (holding that plaintiff would likely suffer irreparable

harm from defendant's false labeling because plaintiff and defendant were competitors, so "any additional sales [defendant] enjoys will likely come at the expense of [competitors]"); *Snuggly Plushez*, 809 F. Supp. 2d at 149 (among competitors, "the sales of one party's product[] would certainly impact the sale of the other party's product").

Courts in this Circuit have recognized that a logical causal connection between false advertising and a plaintiff's sales position exists where products are in direct competition and false claims mislead consumers in a material way. *Vidal Sassoon, Inc. v. Bristol-Meyers Co.*, 661 F.2d 272, 278 (2d Cir. 1981). As Judge Rakoff recently observed, harm from false advertising is "quintessentially irreparable, as 'it is virtually impossible to prove that so much of one's sales will be lost or that one's goodwill will be damaged as a direct result of a competitor's advertisement.'" *N. Am. Olive Oil Ass'n*, 962 F. Supp. 2d at 518-19 (internal quotation omitted). *Accord Grand River Enter. Six Nations, Ltd. v. Pryor,* 481 F.3d 60, 67 (2d Cir. 2007) (explaining that "[i]t is well-established that a movant's loss of current or future market share may constitute irreparable harm.") (citations omitted).

The deceptive character of the "**#1 Vet Recommended Dental Chew**" claim is in no way reduced or negated by Paragon's not having recognized or appreciated its falsity until recently. What Mars characterizes as delay in seeking relief is, in fact, a testament to just how deceptive and misleading the "**#1 Vet Recommended Dental Chew**" claim is. Paragon assumed that the statement was true and **that** is why Paragon did not take action sooner. See Kunst Decl. ¶ 6. The falsity of the claim, and its tendency to injure Paragon and deceive consumers, has not lessened with time. *Cf. N. Am. Olive Oil Ass'n,* 962 F. Supp. 2d at 522 n.3 (rejecting defendant's contention that plaintiff's delay in bringing motion for preliminary injunction undermined irreparable harm argument) (citations omitted).

(2) **Paragon Is Likely To Succeed on the Merits**

(i) **The "#1 Vet Recommended Dental Claim" is Literally False**

To establish literal falsity, "a plaintiff must show that (i) the advertisement makes an express statement of falsity (*i.e.*, it is 'false on its face') or (ii) the advertisement is 'false by necessary implication,' meaning the advertisement's 'words or images, considered in context, necessarily and unambiguously imply a false message.'" *Church & Dwight Co.*, 2015 WL 4002468, at *17 (quoting *Time Warner Cable Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007). If an advertisement is expressly false or false by necessary implication, "the court may enjoin the use of the [advertising] claim without reference to the advertisement's impact on the buying public." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010) (quoting *McNeil-P.C.C., Inc. v. Bristol-Myers Squibb Co.*, 938 F.2d 1544, 1549 (2d Cir.1991)).

A superiority claim like "**#1 Vet Recommended Dental Chew**" requires substantiation. The Court ordered Mars to produce all substantiation for that claim by July 28, 2015. Mars has not yet fully complied with this order,[2] but the documents that Mars did produce on July 28, 2015, shows that



---

[2] Despite having undertaken on the record of the July 28 hearing to continue to produce the documents the Court ordered produced on July 20 and 23 (7/28/15 Tr. 45-46), Mars has not produced any communications or other documents related to the surveys Mars produced. Mars has also not produced any substantiation for the claim that was contemporaneous with its alleged first use of that claim in 2011.

6

Where the basis for an advertising claim is a test or survey, such claim will be deemed literally false if the survey evidence relied upon does not, in fact, support the claim. *See SmithKline Beecham*, 906 F. Supp. at 182 ("Advertising which makes an 'establishment claim', a claim supported by a test or survey, will be found to be literally false if the test or survey relied upon is unreliable or does not in fact support the claim.") (internal citation omitted); *Tambrands, Inc. v. Warner-Lambert Co.*, 673 F. Supp. 1190, 1194 (S.D.N.Y. 1987) (defendant's advertising claim deemed literally false where defendant's own test results refuted the claim). Here, ███ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████ (even assuming, what Mars has not shown, that ███████████ are not available in any "pet specialty stores.").

In general, as noted above, "a footnote or disclaimer that 'purports to change the apparent meaning of the claims and render them literally truthful, but which is so inconspicuously located or in such fine print that readers tend to overlook it, will not remedy the misleading nature of the claims.'" *Church & Dwight*, WL 4002468 at *19 (internal citations omitted). The Footnote is in smaller font than any other text on the package and is, moreover, so inscrutable that even the Court had difficulty understanding it. *See* 7/28/15 Tr. at 8:15-18 (THE COURT: "Well, the footnote says, 'In pet specialty stores among U.S. veterinarians that recommend dental chews for at-home oral care,' and it is modifying -- where is the statement that it modifies?").)

Even after close examination of a physical sample of GREENIES retail packaging at the July 28, 2015 hearing, the Court remarked:

7

> THE COURT: I'm going to read aloud the footnote. It says, "In pet specialty stores, among U.S. veterinarians that recommend dental chews for at-home oral care," **what does the "in pet specialty stores" introductory clause modify? Is that modifying the veterinarians?**
>
> MR. BUTSWINKAS: No --
>
> THE COURT: So give me a preview. The material that your client has relied on in formulating the statement on the front of the GREENIES bag, this is a subset, a sample size, but you say statistically significant sample size of all U.S. veterinarians?
>
> MR. BUTSWINKAS: U.S. veterinarians, not U.S. veterinarians who work in pet specialty stores. "Pet specialty stores" modifies the availability of the product. In other words, if you walk into a Petco or a PetSmart and look on the shelf for this product, the one that is most recommended by veterinarians is this one.

7/28/15 Tr. at 20:15-21:6 (emphasis added); *see also id.* at 21:18-19 ("THE COURT: I completely can understand Mr. Dabney's confusion about what universe of vets are being referred to…").

Even if the Footnote could rightly be considered as qualifying or negating the main message of the "**#1 Vet Recommended Dental Chew**" claim, it would be Mars's burden to demonstrate this. *See Home Box Office, Inc. v. Showtime/The Movie Channel Inc.*, 832 F.2d 1311, 1315-16 (2d Cir. 1987); *Clinique Labs., Inc. v. Dep Corp.*, 945 F. Supp. 547, 556 (S.D.N.Y. 1996) (preliminary injunction granted where defendant did not meet burden of proving that confusion would be dispelled by disclaimer). Mars has not produced any evidence that it tested the Footnote in this regard, and Paragon's pre-litigation study demonstrates that the Footnote fails to change the false impression of Mars's claim. D.I. 9 at ¶ 9.

### (ii) The "#1 Vet Recommended Dental Claim" Misrepresents an Inherent or Material Quality of the Product

In order to succeed on the merits of a false advertising claim under either theory of falsity, literal or implied, "the plaintiff must also demonstrate that the false or misleading representation involved an inherent or material quality of the product." *Tiffany*, 600 F.3d at 112.

A representation involves an "inherent or material quality of the product" if it may influence a consumer's purchasing decisions. *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 423 (S.D.N.Y. 2013) (quoting *Mylan Pharm., Inc. v. Procter & Gamble Co.,* 443 F. Supp. 2d 453, 462 (S.D.N.Y. 2006)).

The "**#1 Vet Recommended Dental Chew**" claim is a powerful statement that is very likely to influence retail buyer purchase decisions and increase the likelihood of a consumer choosing to buy GREENIES® dental dog chews instead of other brands including WHIMZEES. Kunst Decl. ¶ 9.[3]

### (3) The Balance of Hardships Weighs in Favor of Preliminary Injunctive Relief: Mars Has No Legitimate Interest in False Advertising Statements

Mars has no legitimate equitable interest in the continued dissemination of false and misleading advertising, so that the balance of hardships undoubtedly weighs in favor of a preliminary injunction. *Cf. N. Am. Olive Oil Ass'n*, 962 F. Supp. 2d at 524 (holding that the balance of the hardships weighed in favor of preliminary injunction where, in the absence of an injunction, plaintiff would "continue to suffer irreparable lost sales and diminished goodwill" and "[t]he only hardships the injunction will cause to [defendant] are the modest direct costs of creating and distributing the stickers, as well as some diminished goodwill from any resulting negative publicity. "[A]ny diminished goodwill [defendant] suffers from this injunction will

---

3. The requirements for causes of action under New York General Business Law Sections 349 and 350 ("GBL 49" and "GBL 50"), are less stringent than those under section 43(a) of the Lanham Act, but are comparable enough that courts have analyzed such claims under a single Lanham Act analysis. *See, e.g.*, *Novo Nordisk A/S v. Becton Dickinson & Co.,* 997 F. Supp. 470, 472 n.1 (S.D.N.Y. 1998) (granting in part a preliminary injunction on false advertising claims brought under the Lanham Act, GBL 349 and GBL 350 and noting that "[t]he Court's analysis under the New York General Business Law is the same as under the Lanham Act") (citation omitted). For the reasons set forth above, Paragon is also entitled to relief from violations of GBL 349 and 350 that Mars profits from, has the power to stop, and has chosen not to stop.

9

largely be of its own doing, as it 'can assert no equitable interest in the perpetuation of an advertising campaign that is literally false.'") (quoting *Castrol Inc. v. Pennzoil Co.*, 799 F. Supp. 424, 440 (D.N.J. 1992), *aff'd*, 987 F.2d 939 (3d Cir.1993)); *Snuggly Plushez*, 809 F. Supp. 2d at 149 (granting preliminary injunction because defendants were "unable [to] assert an equitable interest in continuing a false advertising campaign") (internal citation omitted).

### (4) Public Interest Would Be Served by Preliminary Injunctive Relief

The Second Circuit has long held that there is a strong public interest in preventing confusion or deception of consumers. *See, e.g., Church & Dwight Co.*, 2015 WL 4002468, at *30 (quoting *ProFitness Phys. Therapy Ctr. v. Pro–Fit Ortho. and Sports Phys. Therapy P.C.*, 314 F.3d 62, 68 (2d Cir. 2002)) (internal quotation marks omitted); *Snuggly Plushez*, 809 F. Supp. 2d at 149 (internal citations and quotation marks omitted). "Through a host of orders and decisions enjoining false advertising claims, this Court has traditionally recognized the strong public policy against the dissemination of false and misleading advertising." *SmithKline Beecham*, 906 F. Supp. at 180 (citations omitted).

In this case, the record shows that the "**#1 Vet Recommended Dental Chew**" is ███████████████████████████████████████████████████████████████████ Even assuming that Mars were able to show that ███████ are not available in any "pet specialty stores." (the apparent premise of the Foonote), the Footnote is so inconspicuous as to go unread by numerous consumers (D.I. 9) and to be inscrutable if read – as the July 28 hearing demonstrated. There is simply no serious question but that the "**#1 Vet Recommended Dental Chew**" is designed to deceive and mislead consumers into believing, falsely, that more veterinarians recommend GREENIES® dental chews than any other brand, and to gain an unfair and unwarranted advantage over Paragon and other rivals on the strength of that blatantly false claim

10

## CONCLUSION

For the reasons set forth above, Paragon's motion for preliminary injunction should be granted. Mars should be ordered (i) to halt any further of use of the claim, "**#1 VET RECOMMENDED DENTAL CHEW**", on GREENIES® dental chew packaging or in television, print, Internet, or any other commercial advertising of GREENIES® dental chew products; and (ii) to abate and remediate existing advertising or packaging bearing the claim, "**#1 VET RECOMMENDED DENTAL CHEW**," including by providing retailers of GREENIES® dental chews with a copy of the Court's preliminary injunction order and with gummed stickers or other materials suitable for covering or obscuring the "**#1 VET RECOMMENDED DENTAL CHEW**" claim as it appears on existing stocks of GREENIES® dental chew products or promotional or point of sale materials or displays that retailers may have on hand.

Dated:   New York, New York
         August 6, 2015

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By _____
   James W. Dabney
   Natasha N. Reed
   Mitchell Epner
   Julia Zousmer
   Emma L. Baratta
   Nathaniel L. Fintz
   Laura Samuels
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

Attorneys for Plaintiff
Paragon Pet Products Europe B.V.

66204945

11