# WILLOW research

**Paragon Pet Products Europe B.V.**
**v.**
**Mars, Incorporated**

**Review and Critique of the Klein Survey**

© 2015 – All rights reserved   Willow Research, LLC   www.willowresearch.com

# DECLARATION OF SARA PARIKH, Ph.D.

I, Sara Parikh, state as follows:

## I. BACKGROUND

1. I am President of Willow Research, LLC ("Willow"), a research and consulting firm that designs and conducts quantitative and qualitative studies of consumers and professionals. Prior to founding Willow in 2015, I served as a Managing Director of Leo J. Shapiro & Associates, LLC ("Shapiro"), where I was responsible for managing a team of research professionals and overseeing all phases of research, including project design, questionnaire development, field instruction and supervision, coding and data specification, data analysis, and reporting. I worked at Shapiro from 1985 to 2015. I am versed in the full complement of quantitative and qualitative research methodologies and testify as a survey expert in litigation. Over the years, I have designed studies on behalf of a wide range of commercial and non-commercial clients. I have an M.A. and Ph.D. in Sociology from the University of Illinois at Chicago and a B.A. in Political Science from the University of Wisconsin-Madison. I am a member of the International Trademark Association and the Law and Society Association. A description of my background and a list of cases in which I have offered survey evidence or testimony in the last five years are attached to the Appendix of this Declaration.

## II. INTRODUCTION

2. In August 2015, I was contacted by counsel from Williams & Connolly LLP, on behalf of its client, Mars, Incorporated, concerning the matter, Paragon Pet Products Europe B.V. v. Mars, Incorporated. Counsel informed me that The Nutro Company ("Nutro"), makers of Greenies brand oral-care pet treats, includes the following Claim on its canine dental chew products:

> **#1 Vet Recommended Dental Chew***
> ***In pet specialty stores among U.S. veterinarians that recommend dental chews for at-home care.**

3. This Claim is based on independent surveys of veterinarians that were commissioned by Nutro between 2009 and 2015. The results of these surveys are reported in individual reports ("Greenies Claims Studies") for each year in which the study was conducted.

4. Counsel informed me that Paragon Pet Products Europe B.V. ("Paragon") alleges that the Claim is false and misleading to consumers. In support of its position, Paragon has introduced a survey that was conducted by Robert L. Klein in this matter ("Klein Survey").

5. Counsel asked me to review the Klein Survey to determine if it provides a valid measure of whether the Greenies Claim is false or misleading to consumers. I agreed to do so.

6. Materials that I have reviewed and relied upon include the following:
   - Paragon Pet Products Europe B.V. v. Mars, Inc. Complaint; July 16, 2015
   - Paragon Pet Products Europe B.V. v. Mars, Inc. Declaration Of Robert L. Klein; July 20, 2015
   - Expert Report Of Robert L. Klein, Prepared For Paragon Pet Products Europe B.V., Perceptions Of Advertising Claim "#1 Vet Recommended Dental Chew": Survey Methodology And Results; July 20, 2015
   - Paragon Pet Products Europe B.V. v. Mars, Inc. Memorandum In Support Of Plaintiff's Motion For Preliminary Injunction; August 6, 2015
   - Paragon Pet Products Europe B.V. v. Mars, Inc. Declaration Of Roelof Kunst; August 6, 2015

- <u>Greenies Claims Studies:</u>
    - Greenies Veterinary Claims Study; May 8, 2009; May 15, 2009
    - Greenies 2012 Veterinary Claims Study; July 2, 2012
    - Greenies 2013 Veterinary Claims Study; June 27, 2013; July 31, 2013
    - Greenies 2014 Veterinary Claims Study; August 5, 2014
    - Greenies 2015 Veterinary Claims Study; June 24, 2015

- Paragon Pet Products Europe B.V. v. Mars, Inc. Declaration Of Amelia Strobel In Support Of Defendant Mars Incorporated's Opposition To Plaintiff's Motion For Preliminary Injunction; August 26, 2015

7. This Declaration summarizes my central opinions and conclusions about the Klein Survey and other materials. I reserve the right to offer additional opinions and conclusions in the event that other information or data become available to me.

**III. CONCLUSIONS**

8. The Klein Survey is an invalid measure of consumer understanding of the Greenies Claim. It suffers from a number of deficiencies in the survey design, stimulus, universe, and the questions asked of participants.

- The Klein Survey did not measure consumer understanding of the entire Claim. Specifically, the Klein Survey failed to ask survey participants their understanding of the Claim with the Footnote, or the Footnote alone. Further, the manner in which the stimulus (Greenies packaging) was shown in the survey minimized the visibility of the Footnote to survey participants.

- The Klein Survey failed to incorporate an independent control cell to account for survey noise, guessing, or pre-existing beliefs. Therefore, there is no way to isolate the impact of the Claim on the survey results, or to determine whether consumers would have given the same answer regardless of the Claim.

- The survey universe is overly broad. The Klein Survey included all dog owners instead of targeting potential purchasers of dental chews for dogs. Therefore, the Klein Survey includes non-purchasers of dental chews for dogs, who do not constitute the target universe for Greenies.

- Key Questions 3 and 5 of the Klein Survey ask participants what percentage of vets they believe recommend Greenies. These questions are highly suggestive. Consumers would have no way of knowing the exact percentage of vets who recommend Greenies, and are likely to simply be guessing. The suggestive nature of these questions is compounded by the absence of a control group, which would have accounted for any survey noise or guessing.

- ████████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████

4

## IV. ANALYSIS

***The Klein Survey did not test consumer understanding of the entire Claim, and minimized the visibility of the Footnote.***

9. Klein asked consumers what the Claim "#1 Vet Recommended Dental Chew" means to them. However, he did not ask respondents the meaning of the entire Claim, with the Footnote. In addition, the Klein Survey omitted the asterisk at the end of the Claim, which would have directed consumers to the Footnote. Without a measure of consumer understanding of the Footnote, we cannot assess consumer understanding of the entire Claim, or the impact of the Footnote on consumer understanding of the entire Claim.

10. Further, advertising and packaging surveys typically begin with a general open-ended question about the main messages that consumers take away from the advertising or packaging at issue in order to understand the central ideas or themes that are being communicated to potential purchasers about the product. The Klein Survey did not include such a main message question, which would have shed light on whether and to what extent consumers spontaneously notice the Claim or consider it to be a central message of the packaging.

11. Additionally, the manner in which the Klein Survey exposed participants to the Greenies packaging diminished the visibility of the back of the package, which contains the Footnote. Despite Paragon's criticism that "…*Mars relies on an inconspicuous and inscrutable footnote to contradict the meaning of the* **'#1 Vet Recommended Dental Chew'** *claim,*"[1] the Klein Survey actually minimized the Footnote by focusing respondents on the front of the package. As seen below in a screen shot from the Klein Survey program, the Klein Survey focused participants on the front of the package. In order to view the back of the packaging where the Footnote is, the respondent would have had to hover her mouse over a small icon in the lower left of her screen. Further, as seen below, the fact that Greenies packaging is soft-sided makes it difficult to read all of the package details in the photograph that was shown to survey participants.

---

[1] Paragon Pet Products Europe B.V. v. Mars, Inc. Memorandum In Support Of Plaintiff's Motion For Preliminary Injunction; August 6, 2015; page 2.

5

**Screen Shot From Klein Survey Program[2]**

[Screenshot of survey interface showing Introduction 2 with instructions: "Please look at the dental dog chew product displayed below as you would if you saw it while shopping for dog treats and were considering purchasing it. Please click the 'NEXT' button when you are ready to continue." Viewing Instructions note and image of a Greenies dental dog chew package labeled "Cleans teeth faster than a toothbrush!" and "Treats for Dogs 25-50 lbs REGULAR". Copyright © 2015, Applied Marketing Science, Inc.]

***The Klein Survey failed to incorporate an independent control in order to isolate the impact of the Claim.***

12. Surveys that are designed to test a causal proposition or measure the impact of a particular stimulus can generate survey noise that is not directly attributable to the test stimulus. Properly designed false advertising surveys incorporate a control to account for any survey noise, guessing, or pre-existing beliefs that are not directly attributable to the test stimulus, or advertisement at issue. In their discussion of false advertising surveys, Diamond and Swann explain that *"By adding an appropriate control group, the*

---

[2] Expert Report Of Robert L. Klein, Prepared For Paragon Pet Products Europe B.V., Perceptions Of Advertising Claim "#1 Vet Recommended Dental Chew": Survey Methodology And Results; July 20, 2015; Appendix page 42.

6

*survey expert can test directly the influence of the allegedly actionable stimulus. The failure to use a control group…can be fatal."*[3]

13. In the Klein Survey, it is possible that, regardless of the content of the Claim, survey participants would have taken away a superiority message from the packaging and/or given similar answers to Questions 3 and 5 concerning the percentage of vets that recommend Greenies canine dental chews. In analyzing survey findings, the key result from the control cell is typically deducted from the corresponding result in the test cell to isolate the impact that is directly attributable to the advertisement or claim at issue. Without a control in the Klein Survey, there is no way to account for survey noise, guessing or pre-existing beliefs, or to isolate the impact of the Claim on consumer takeaway. Further, absent a control, there is no way to determine whether Klein Survey respondents would have given the same answers, regardless of the Claim.

**The Klein Survey universe is overly broad.**

14. In designing a survey of consumer perception, it is important to target potential purchasers of the product in question.
    > *"To test what messages consumers receive from an allegedly false or misleading advertisement, litigants must survey potential prospective purchasers of the advertiser's product."*[4]

15. The Klein Survey is flawed because it includes all dog owners instead of limiting the universe to just prospective purchasers of dental chews. There is no reason to believe that non-purchasers of dental chew products would share the same set of beliefs or baseline knowledge about the product category as purchasers of dental chews.

16. Targeting the universe to potential purchasers is important because they are most likely to be exposed to the product and to be informed about the product category. However, the Klein Survey included any household with a dog age 1 year or older. It did not specifically target dog owners who purchase dental chew products for their dogs. It is my understanding that ▇▇▇▇▇▇▇▇▇▇▇▇▇ dog owners purchase treats classified as

---

[3] Shari Seidman Diamond and Jerre B. Swann, eds., Trademark and Deceptive Advertising Surveys, 2012, page 182.
[4] Ibid, at page 179.

7

dental chews for their dogs.[5] By including all dog owners, the Klein Survey universe is overly broad and includes roughly ▮▮▮▮▮ respondents who are not potential purchasers of dental chews and for whom the Claim would have no relevance in terms of a purchasing decision.

**Key questions in the Klein Survey are highly suggestive.**

17. Questions 3 and 5 of the Klein Survey asked survey participants what percent of vets they believe recommend Greenies.

> Q3. Based on the phrase "#1 Vet Recommended Dental Chew", what percentage of veterinarians in the United States do you believe recommend Greenies dental chews? *(Select one only)*
> - 10% or fewer
> - 11% to 20%
> - 21% to 30%
> - 31% to 40%
> - 41% to 50%
> - 51% to 60%
> - 61% to 70%
> - 71% to 80%
> - 81% to 90%
> - 91% or above
> - Don't know/Unsure **[CONTINUE]**
>
> Q5. Based on the phrase "#1 Vet Recommended Dental Chew" with a footnote which says **"In pet specialty stores among U.S. veterinarians that recommend dental chews for at-home oral care"**, what percentage of veterinarians in the United States do you believe recommend Greenies dental chews to dog-owning customers? *(Select one only)*
> - 10% or fewer
> - 11% to 20%
> - 21% to 30%
> - 31% to 40%
> - 41% to 50%
> - 51% to 60%
> - 61% to 70%
> - 71% to 80%
> - 81% to 90%
> - 91% or above
> - Don't know/Unsure

18. Consumers would have no way of knowing, or even estimating, the percentage of vets who recommend Greenies. As a result, they are likely to simply be guessing. In fact, roughly one-third of the Klein Survey respondents (32%) said that they did not know the

---

[5] Paragon Pet Products Europe B.V. v. Mars, Inc. Declaration of Amelia Strobel In Support Of Defendant Mars Incorporated's Opposition To Plaintiff's Motion For Preliminary Injunction; August 26, 2015; page 5.

answer to Question 3. The suggestive nature of these questions is compounded by the absence of a control, which would have allowed Klein to account for the baseline level of pre-existing beliefs and guessing that are not attributable to the Claim at issue.

**Despite these deficiencies in the Klein Survey,** ███████████████████
████████████

19. In his Declaration, Mr. Klein suggests that an answer of more than 50% to Question 3 ("majority hurdle") indicates that consumers are being misled by the Claim: *"Based on the survey data reported in Exhibit 1, it is my professional opinion that the statement, '#1 Vet Recommended Dental Chew,' as it appears on the front panel of GREENIES product packaging…is understood by approximately 50% of relevant consumers as meaning that a majority of all veterinarians recommend GREENIES dental dog chews."* [6]

███████████████████████████████
████████

20. As the table below shows, ███████████████████████
███████████████████████████████
███████████████████████████████
████████████████████



**Results of Greenies Claims Studies**[7]

| Greenies Claim Study | | |
|---|---|---|
| ███ | | ███ |
| ███ | | ███ |
| ███ | | ███ |
| ███ | | ███ |
| ███ | | ███ |

---

[6] Paragon Pet Products Europe B.V. v. Mars, Inc. Declaration Of Robert L. Klein; July 20, 2015; paragraph 8, page 3.
[7] Greenies Claims Studies: 2009 (May 8, 2009 report), 2012, 2013 (June 27 and July 31, 2013 reports), 2014, 2015.
[8] ███████████████████████████

21. Additionally, in its Memorandum in Support of a Motion for Preliminary Injunction, Paragon asserts that ███████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████.⁹

22. ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████ ██████████████████████████████

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

---

⁹ Paragon Pet Products Europe B.V. v. Mars, Inc. Memorandum In Support Of Plaintiff's Motion For Preliminary Injunction; August 6, 2015; page 1.
¹⁰ Greenies 2015 Veterinary Claims Study; June 24, 2015; page 6.
████████████████████████████████████████████████████
███████████████████████████████████

23.     In light of its flaws, it is my opinion that the Klein Survey does not provide a valid measure of whether the Greenies Claim is false or misleading to consumers.

Pursuant to 28 U.S.C., Section 1746, I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 26, 2015 in Chicago, Illinois.

_____
Sara Parikh, Ph.D.

# APPENDIX

- Sara Parikh Biography and Case List

# WILLOW research



## DR. SARA PARIKH
Biography

### Summary

Sara Parikh is an accomplished research professional with a Ph.D. in Sociology and over 25 years of experience in research design, execution and analysis.

### Experience

Sara Parikh is President of Willow Research, LLC (Willow), a research and consulting firm that designs and conducts quantitative and qualitative studies of consumers and professionals. Prior to founding Willow in 2015, Sara served as a Managing Director at Leo J. Shapiro & Associates (Shapiro) where she was responsible for managing a team of research professionals and overseeing all phases of research, including project design, questionnaire development, field instruction and supervision, coding and data specification, data analysis, and reporting. Sara worked at Shapiro from 1985 to 2015. Sara is versed in the full complement of quantitative and qualitative research methodologies and testifies as a survey expert in commercial litigation. Over the years, Sara has designed studies on behalf of a wide range of commercial and non-commercial clients.

### Education

Ph.D. and M.A in Sociology from the University of Illinois at Chicago
- Doctoral dissertation supported by a grant from the National Science Foundation
- Postdoctoral fellow at the American Bar Foundation

B.A. in Political Science from the University of Wisconsin-Madison

### Professional Activities

- Regularly presents on topics related to survey research and consumer behavior at professional conferences and seminars on behalf of the American Bar Association, the Chicago Bar Association, the National Advertising Division of the Better Business Bureau, and other professional associations
- Member of the Law and Society Association and the International Trademark Association

WILLOW RESEARCH, LLC     1509 WEST BERWYN, SUITE 201D          CHICAGO, IL  60640

Cases in which Sara Parikh has testified, been deposed or offered survey evidence in the past five years:

    In the Matter of CERTAIN FOOTWEAR PRODUCTS
        United States International Trade Commission, Washington, DC.  2015.
        *Trademark Infringement*

    E.J. GALLO WINERY versus DARK HORSE DISTILLERY and T. EDWARD WINES
        Southern District of New York.  2014.
        *Trademark Infringement*

    RISE-N-SHINE, LLC versus ROBIN DUNER-FENTER and GETAWAYGREY, LLC
        Southern District of New York.  2014.
        *Trademark Infringement*

    NATIONAL BASKETBALL ASSOCIATION versus DONALD STERLING
        NBA, Board of Governors.  2014.
        *Fan Impact Study*

    VERMONT ATTORNEY GENERAL versus T-MOBILE, VERIZON, SPRINT & AT&T
        Federal Trade Commission.  2013.
        *Mobile Cramming*

    OUTRAGE, LLC versus NEW ARCHERY PRODUCTS CORP.
        Western District of Wisconsin.  2013.
        *False Advertising*

    JACKSON HEWITT INC. versus H&R BLOCK, INC., HRB TAX GROUP, INC., and H&R BLOCK TAX SERVICES LLC
        Southern District of New York.  2011.
        *False Advertising*

    RUG DOCTOR, INC. versus BISSELL HOMECARE, INC.
        National Advertising Division, Better Business Bureau.  2011.
        *False Advertising*

    BISSELL HOMECARE, INC. versus RUG DOCTOR, INC.
        Western District of Michigan.  2011.
        *False Advertising*

    HANSEN BEVERAGE COMPANY (d/b/a MONSTER BEVERAGE COMPANY) versus CYTOSPORT, INC.
        Central District of California.  2010.
        *Trademark Infringement*

    MILLERCOORS, L.L.C. versus ANHEUSER-BUSCH INBEV
        National Advertising Division, Better Business Bureau.  2010.
        *False Advertising*