LAW OFFICES
# WILLIAMS & CONNOLLY LLP

725 TWELFTH STREET, N.W.

WASHINGTON, D. C. 20005-5901

(202) 434-5000

FAX (202) 434-5029

KATHERINE TURNER
(202) 434-5487
kturner@wc.com

EDWARD BENNETT WILLIAMS (1920-1988)
PAUL R. CONNOLLY (1922-1978)

September 16, 2015

**VIA ECF**

The Honorable Paul A. Engelmayer
United States District Court for the Southern
District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

    Re:  *Paragon Pet Products Europe B.V. v. Mars, Incorporated*, Case No. 15-cv-5520 (PAE)

Dear Judge Engelmayer:

       On behalf of Mars, Incorporated ("Mars"), we write in response to the September 14 letter (Dkt. 89) from Hughes Hubbard & Reed LLP ("Hughes Hubbard"), counsel for Paragon Pet Products Europe B.V. ("Paragon"). In a highly unusual request, Paragon asks the Court to order Paragon's own outside law firm to produce to *itself* the nearly 500,000 pages of documents produced by both parties in the trademark lawsuit *The Nutro Company v. Paragon Pet Products USA, Inc. & Unipet USA LLC*, No. 13-cv-1232 (M.D. Tenn.) (the "Tennessee Action"), including documents whose use is restricted by a protective order in that action. The Court should deny this request for two reasons.

       *First,* Paragon's request would improperly circumvent normal discovery procedures. The parties have each served document requests, and their respective productions are due in two days. To respond to Paragon's requests, Mars has identified relevant custodians and collected their files to conduct a reasonable search for responsive documents. Moreover, Mars *included* in its review set documents produced in the Tennessee Action for those individuals who are custodians in this litigation, applied its search terms to that set, and is reviewing the search term hits for responsiveness. Thus, there is no reason to "clone" the discovery produced in the Tennessee Action. *See, e.g.*, *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000) ("Cloned discovery, [which is] requesting all documents produced or received during other lawsuits or investigations, is irrelevant and immaterial unless the fact that particular documents were produced or received by a party is relevant to the subject matter of the instant case." (quotations omitted)). Rather, the parties should produce documents that are relevant and responsive to the requests in *this case* under normal discovery procedures.

       *Second,* Paragon's request would violate the protective order in the Tennessee Action.

WILLIAMS & CONNOLLY LLP

The Honorable Paul A. Engelmayer
Page 2

That order prohibits use of protected materials "for any purpose other than in connection with [the Tennessee Action]." Ex. A ¶ 5.[1] Paragon's request seeks to have this Court endorse a violation of that order. Rather, the Court should allow discovery to proceed in this case under normal procedures, as described above, and the Tennessee court should administer its own protective order and address any violation of it.

Finally, Paragon's incomplete account of its procedural maneuvering attending its request is inaccurate. The following timeline states the actual sequence of events:

- On August 7, Paragon Pet Products USA, Inc. ("Paragon USA") filed a motion in the Tennessee Action requesting permission for Paragon to use 2010 and 2011 Awareness, Attitudes, and Usage ("AAU") studies conducted by Trone Brand Energy ("Trone"), as well as a few other documents, in this case.[2] *See* Tenn. Action, Dkt. 81 (filed under seal).

- On August 11, 2015, Hughes Hubbard separately contacted Williams & Connolly ("W&C") to request that Mars allow use of *all* documents produced in the Tennessee Action in this case. *See* Ex. C. W&C responded that Mars was "considering [the] request," and that "[i]n the meantime, if for any reason [Paragon] believes that it needs to use confidential Tennessee litigation documents in this case immediately, please identify the documents and we will promptly let you know if we have any objection to producing them in this case." Dkt. 89, Ex. 3 at 1. Mars did not "broadly consent[] to Hughes Hubbard's use of 'confidential Tennessee litigation documents'" or "invit[e] [Hughes Hubbard] to search for and 'identify the documents' from the Tennessee Action that Paragon 'believes it needs to use' in this case," as Paragon now asserts. Dkt. 89 at 2.

- On August 17, Paragon USA filed a "Supplemental Memorandum" in the Tennessee Action asking that court vastly to expand the requested modification of the protective order to permit use here of *all* documents produced in that action. Ex. D.

- On August 24, Nutro opposed the requested sweeping modification of the protective order, arguing *inter alia* that "cloning" discovery was an insufficient reason for the relief sought

---

[1] Hughes Hubbard represents Paragon's affiliate in the Tennessee Action; Arent Fox represents The Nutro Company ("Nutro"). Mars is not a party to the Tennessee Action.

[2] Mars did not improperly "withhold" these or any documents. On July 28, Mars produced the 2009, 2012, 2013, 2014, and 2015 Trone Veterinary Claims Studies that Nutro had commissioned to substantiate the advertising claim at issue. Thereafter, in response to a request from Hughes Hubbard, I confirmed that Trone did not conduct Veterinary Claims Studies in 2010 or 2011, and stated that I was not aware of any other relevant veterinarian surveys for 2010 or 2011. This was based on my personal misunderstanding that AAU studies conducted during those years were consumer surveys, not veterinarian surveys. When Hughes Hubbard brought the 2010 and 2011 AAU studies to my attention (because it already had them), I sent Hughes Hubbard a letter correcting my previous statement, which I explained was "based on my personal misunderstanding about the nature of October 22, 2010 and November 30, 2011 Trone survey reports." Ex. B at 2. Mars simultaneously produced the AAU studies.

WILLIAMS & CONNOLLY LLP

The Honorable Paul A. Engelmayer
Page 3

by Paragon USA.  Dkt. 89, Ex. 6 at 3–6.

- While Paragon USA's motion was pending in Tennessee, on August 25, Hughes Hubbard, acting on behalf of Paragon, issued a subpoena to itself in the name of this Court.  Dkt. 89, Ex. 7.  The subpoena demanded that Hughes Hubbard deliver to itself (as counsel for Paragon) all documents produced in the Tennessee Action that are "relevant to any issue in" this case.  *Id.*  That evening, Arent Fox informed Hughes Hubbard that Nutro objected to the use of the subpoena to circumvent the Tennessee protective order.  Ex. E.

- Declining to wait for the Tennessee court to rule on the motion to amend the protective order, Paragon on August 26 attached four confidential Nutro Tennessee documents to its Motion to Dismiss ("MTD") Opposition in this case.  *See* Dkt. 73, Exs. 14–17.

- On August 28, Nutro's counsel informed Hughes Hubbard that its submission of confidential documents here violated the Tennessee protective order, Dkt. 89, Ex. 10, and advised Nutro would take action unless Paragon withdrew the documents immediately, *id.*

- Hughes Hubbard refused, citing its subpoena to itself and stating that it had been "commanded" by this Court to produce the documents to itself.  Dkt. 89, Ex. 11.  Nutro then moved for civil contempt sanctions in Tennessee.  That motion is pending.

- On September 2, the Tennessee court denied Paragon USA's protective order modification motion as procedurally defective, since the original motion had not made the sweeping request included in the "Supplemental Memorandum."  Ex. F.

- On September 8, Hughes Hubbard requested that W&C "advise [Hughes Hubbard] promptly if Mars has any objection to producing the documents" attached to Paragon's MTD Opposition in violation of the Tennessee protective order.  Ex. G.  In response, W&C explained that Mars viewed the request to be untimely and without purpose, since Paragon had "already used these four confidential Tennessee documents in its motion to dismiss in this case," and thereby unilaterally made them a part of the case.  Dkt. 89, Ex. 12.

Thus, Mars has not put Paragon "in a position where Mars is not raising any objection to the discovery sought by [Hughes Hubbard's subpoena]" while "seeking to suppress or delay discovery of that evidence."  Dkt. 89 at 3.  Rather, Mars's position is simply that documents should be produced in this case just like in every other case:  in response to specific discovery requests, in accordance with the scheduling order.  "Cloned" discovery is improper and unnecessary, and the Tennessee protective order should be addressed in Tennessee.

Respectfully submitted,

Katherine M. Turner

Enclosures
cc:   Counsel of Record (via ECF)