UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
:
PARAGON PET PRODUCTS EUROPE B.V.,  :
:
        Plaintiff,  :
:   **FIRST AMENDED AND**
      v.  :   **SUPPLEMENTAL COMPLAINT**
:
MARS, INC. and THE NUTRO COMPANY,  :   15 Civ. 05520
:
        Defendants.  :   **JURY TRIAL DEMANDED**
:
-------------------------------------------------------------------- x

        Plaintiff Paragon Pet Products Europe B.V., by its attorneys, Hughes Hubbard & Reed LLP, for its complaint in this action alleges:

## PARTIES AND JURISDICTION

    1.    Paragon Pet Products Europe B.V. ("Paragon") is a corporation organized and existing under the laws of The Netherlands, having its principal place of business in Veendam, The Netherlands.

    2.    Defendant Mars, Inc. ("Mars") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business in McLean, Virginia.

    3.    Defendant The Nutro Company ("TNC") is a corporation organized and existing under the laws of the State of California, having its principal place of business in Franklin, Tennessee.

    4.    This action arises under the Trademark Act, 15 U.S.C. §§ 1051 *et seq.*, the New York General Business Law, N.Y. Gen. Bus. Law §§ 349-350, and the common law of the State of New York.

5. The Court has jurisdiction to hear this action under 28 U.S.C. §§ 1331, 1332(a), 1338(a), and 1367(a). The parties are of diverse citizenship, and the amount in controversy exceeds the sum or value of $75,000 exclusive of interest and costs.

## FIRST CAUSE OF ACTION

### (Violation of 15 U.S.C. § 1125(a) by TNC)

6. TNC markets and sells GREENIES canine dental chew products in United States commerce.

7. Commencing in or about 2011, TNC began using the statement, "**#1 Vet Recommended Dental Chew**", in commercial advertising of GREENIES canine dental chew products in United States commerce and in New York, including on GREENIES retail product packaging delivered to retail stores in New York, New York.

8. At the time it began using the "**#1 Vet Recommended Dental Chew**" statement, TNC had actual knowledge that the claim was false as alleged more fully below.

9. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████

10. ███████████████████████████████████████
███████████████████████████████████████
██████████████

11. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

12. ███████████████████████████████████████
████████████████



13. ▮

14. ▮

15. ▮

16. ▮

17. Despite having actual knowledge ▮ ▮, TNC in 2011 modified GREENIES retail product packaging to include the bolded statement on the front panels thereof, "**#1 Vet Recommended Dental Chew**".

18. TNC adopted and commenced use of the "**#1 Vet Recommended Dental Chew**" statement in bad faith, with actual knowledge of its falsity, and with specific intent to defraud consumers and to gain an unfair and unwarranted competitive advantage over rival sellers of canine dental chews.

19. Retail packaging of GREENIES dental dog chew products includes an inconspicuous footnote on the product's back panel which states in very small type, "In pet specialty stores among U.S. veterinarians that recommend dental chews for at-home oral care" (the "Packaging Footnote").

20. According to survey research the Paragon Europe commissioned in June 2015, the GREENIES advertising statement, "**#1 Vet Recommended Dental Chew**", is understood by a

substantial number of canine dental chew purchasers as meaning that GREENIES is the brand of canine dental chew that veterinarians recommend most often (the "Message").

21. The Packaging Footnote is not effective to change or correct the Message; and at all events, as of at least August and September 2015, C.E.T. canine dental chews were available in "pet specialty" stores in New York City, including Petropolis and Petco.

22. Despite having actual knowledge ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, TNC began using consumer-oriented television advertising of GREENIES canine dental chews which included the bolded statement, "**#1 Vet-Recommended Dental Treats**".

23. TNC adopted and commenced use of the "**#1 Vet Recommended Dental Treats**" statement in bad faith, with actual knowledge of its falsity, and with specific intent to defraud consumers and to gain an unfair and unwarranted competitive advantage over rival sellers of canine dental chews.

24. Television advertising of GREENIES dental dog chew products includes an inconspicuous footnote which appears for approximately one second and states in very small type, "#1 vet-recommended pet specialty dental chews for at-home oral care" (the "Television Footnote"), while the "**#1 Vet-Recommended Dental Treats**" statement appears in bold type and remains visible to viewers for approximately four seconds.

25. On information and belief, the "**#1 Vet Recommended Dental Treats**" statement in GREENIES television advertising is understood by a substantial number of canine dental chew consumers as meaning that GREENIES is the brand of canine dental chew that veterinarians recommend most often (the "Television Message").

26. On information and belief, the Television Footnote is not effective to change or correct the Television Message; and at all events, as of at least August and September 2015, C.E.T. canine dental chews were available in "pet specialty" stores in New York City, including Petropolis and Petco.

27. TNC has purposefully sought to conceal the false and deceptive character of the "**#1 Vet-Recommended Dental Treats**" claim and the Television Message.



28.

29.

30.

31.

32. On information and belief, in or about April 2006, Mars purchased the GREENIES canine dental chew business and brand name from the then then-owners of S&M NuTec, LLC, a Missouri limited liability company ("S&M NuTec").

33. On information and belief, prior to December 22, 2008, Mars was the sole member of S&M NuTec.

34. On information and belief, in or about May 2007, Mars acquired the business and brand name of TNC, a company which prior to May 2007 had had no involvement in the GREENIES business.

35. On information and belief, on or about December 22, 2008, Mars contributed its sole membership interest in S&M NuTec to Mars Petcare US, Inc. ("Mars Petcare US"), a Delaware corporation.

36. On information and belief, approximately one hour after the transaction referred to in paragraph 35, above, Mars caused S&M NuTec to merge with TNC, as a result of which the separate existence of S&M NuTec ceased.

37. On information and belief, Mars continues to be the beneficial owner of the GREENIES business and brand name that it bought from the owners of S&M NuTec in 2007.

38. On information and belief, Mars controls and directs the operations of TNC as it previously controlled and directed the operations of S&M NuTec between 2006 and 2008.

39. On information and belief, Mars developed, formulated, patented, and owns the canine dental chew product that TNC markets and sells under the GREENIES trademark.

40. GREENIES television advertising containing the "**#1 Vet Recommended Dental Treats**" claim includes a reference to U.S. Patent No. D587,428 issued March 3, 2009, to Mars (the "Mars '428 Patent").

41. The Mars '428 Design Patent is owned by Mars and discloses and claims the design of the Mars re-designed and re-formulated GREENIES canine dental chew product which TNC markets and sells.

42. The Mars '428 Design Patent states in part: ""The 'GREENIES' logo that forms a part of one embodiment of the claimed edible pet chew is a trademark of Mars, Incorporated."

43. On information and belief, Mars is a privately held company and does not publicly disclose its legal relationship to individuals who manage its wholly own business units including Mars Petcare US or TNC.

44. On information and belief, Mars controls and can produce, on demand, any documents that are held in the name of Mars Petcare US or TNC.

45. On July 28, 2015, in response to court Orders dated July 20 and 23, 2015, Mars purported to produce all substantiation (e.g., documents, reports, studies, data, emails, and so forth) for the claim, #1 Vet Recommended Dental Chew, as it appears on retail packaging of GREENIES canine dental chews embodying the Mars-owned '428 Patent design.

46. The documents that Mars produced on July 28, 2015 (the "Mars Substantiation Documents") did not include ███████████████████████████████████████████████████████████████████████████████████

47. The Mars Substantiation Documents did include survey reports in which veterinarians were asked what brand of *feline* dental chews they recommended most often.

48. In August 2015, Paragon Europe commissioned Applied Marketing Science, Inc. ("AMS") to conduct a survey of veterinarians (the "2015 AMS Survey") ██████████████ ███████████████████████████████████████████

49. The 2015 AMS Survey asked veterinarians, "Thinking of brands of dental treats you've ever recommended for at-home oral care for dogs, what is the brand you've recommended most often?"

50. In the 2015 AMS Survey, 48.6% of the veterinarians surveyed identified C.E.T. dental chews as the brand of canine dental chew they had recommended most often; as compared with 26.4% of veterinarians who said they recommended GREENIES dental chews most often.


51. The GREENIES advertising statements, "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treats**", misrepresent the nature, characteristics, or qualities of GREENIES canine dental chews.

52. The GREENIES advertising statements, "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treats**", are deceptive and likely to mislead and deceive buyers of dental dog chew products as to the nature, characteristics, or qualities of GREENIES dental dog chew products.

53. The GREENIES advertising statements, "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treats**", are consumer-oriented, are related to health and safety, and are material to dental dog chew purchase decisions.

54. Paragon, Mars, and TNC are direct competitors in the business of manufacturing, marketing, and selling dental dog chew products.

55. Paragon manufactures, markets, and sells WHIMZEES dental dog chew products in United States commerce.

56. Paragon believes that it is likely to be damaged by TNC's and Mars's commercial advertising statements, "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treats**", including in the form of lost sales of WHIMZEES canine dental chew products in New York and other parts of the United States.

57. The conduct of TNC and Mars alleged in paragraphs 6-56, above, threatens Paragon with irreparable harm for which it has no adequate monetary remedy.

58. TNC is liable to Paragon for violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

## SECOND CAUSE OF ACTION

**(Violation of N.Y. Gen. Bus. Law §§ 349(h) and 350(e) by TNC)**

59. Paragraphs 1-58, above, are re-alleged and incorporated by reference as if set forth in full.

60. The GREENIES advertising statement, "**#1 Vet Recommended Dental Chew**", has unfairly disadvantaged Paragon in competition for sales of dental dog chews in New York and this district.

61. The GREENIES advertising statement, "**#1 Vet-Recommended Dental Treats**", has unfairly disadvantaged Paragon in competition for sales of canine dental chews in New York and this district.

62. TNC is liable to Paragon for violation of N.Y. Gen. Bus. Law §§ 349(h) and 350(e).

## THIRD CAUSE OF ACTION

**(Unfair Competition Under New York Law by TNC)**

63. Paragraphs 1-62, above, are re-alleged and incorporated by reference as if set forth in full.

64. TNC is liable to Paragon for unfair competition under New York common law.

## FOURTH CAUSE OF ACTION

**(Violation of 15 U.S.C. § 1125(a) by Mars)**

65. Paragraphs 1-64, above, are re-alleged and incorporated by reference as if set forth in full.

66. At the time Mars acquired the GREENIES business and brand name in or about April 2006, the product was the subject of negative publicity and multiple lawsuits alleging that the original GREENIES canine dental chew product was a choking hazard and killing dogs.

67. A widely reported CNN investigation uncovered forty (40) cases between 2003 and 2006 in which a veterinarian had to extract a Greenie from a dog after the treat became lodged either in the animal's esophagus or intestine; in thirteen (13) of those cases, the pet died.

68. After buying the GREENIES brand name and business in April 2006, Mars undertook to re-design and re-formulate the GREENIES canine dental chew product.

69. On June 21, 2006, attorneys representing Mars filed an application which matured as the Mars '428 Patent, which is owned by Mars and discloses and claims the configuration of the current GREENIES canine dental chew product.

70. On June 21, 2007, attorneys representing Mars filed an application which matured as U.S. Patent No. 7,497,189 (the "Mars '189 Patent"), which also discloses and claims the configuration of the current GREENIES canine dental chew product.

71. On information and belief, one way that Mars has sought to rehabilitate the GREENIES brand is by terminating the existence of the brand's original owner, S&M NuTec, and contributing the Mars-owned GREENIES business to another one of Mars's wholly-owned business units, defendant TNC, which had had no involvement in the GREENIES business prior to December 2008 and whose reputation had not been tarnished as had that of S&M NuTec.

72. On information and belief, one way that Mars has sought to rehabilitate the GREENIES brand is by sponsoring and funding GREENIES product advertising and marketing activities targeted at veterinarians.

73. On information and belief, one way that Mars has sought to rehabilitate the GREENIES brand is by publicly identifying GREENIES as a "Mars" brand sold by "Mars Petcare" and worthy of trust because of Mars's scientific acumen and business principles and public spiritedness.

74. Mars's corporate website expressly vouches for the veracity of how Mars Petcare products, including GREENIES, are presented to consumers.

75. Mars has itself, on its corporate website, asserted that "[t]he GREENIES® Brands include the number-one veterinarian-recommended canine dental chews and feline dental treats available in pet specialty stores."

76. On information and belief, Mars has a direct financial stake in the GREENIES canine dental chew business and profits from use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements made in GREENIES commercial advertising.

77. On information and belief, between 2011 and the present Mars has directly employed or controlled one or more individuals who have participated in the conduct of the GREENIES canine dental chew business, which individuals may include Anthony J. Palumbo, Amelia Strobel, Ladd Watts, Jarrod Kersey, or one or more individuals ▆▆▆▆▆▆▆▆▆▆▆▆▆ ▆▆▆▆▆▆▆▆.

78. On information and belief, Mars has actively participated and furthered use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements made in GREENIES commercial advertising, including by declining to exercise its right to stop use of those statements, by publicly vouching for the veracity of those statements, by continuing to license TNC to practice the Mars '428 and Mars '189 Patents despite knowledge of the falsity of the statements, and by funding and supporting the continued use of those statements.

79. On information and belief, use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements in GREENIES commercial advertising is part of a common plan between Mars and TNC to market the Mars-owned GREENIES product and

to gain an unfair competitive advantage over Paragon Europe and other rival sellers of canine dental chews in United States commerce.

80. Mars has lent aid and encouragement to the use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements in GREENIES commercial advertising, including that described in paragraphs 69-79, above.

81. Mars has ratified the use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements in GREENIES commercial advertising which were made for its ultimate benefit.

82. Between 2011 and the present Mars has had actual knowledge of "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements in GREENIES commercial advertising.

83. Between 2011 and the present Mars has had actual knowledge of, or was willfully blind to, the falsity of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements in GREENIES commercial advertising.

84. Between 2011 and the present Mars has given substantial assistance to TNC's use and continued use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet-Recommended Dental Treat**" statements in GREENIES commercial advertising, including the assistance identified in paragraphs 69-79, above.

85. Mars is liable to Paragon, both directly and indirectly, for multiple violations of 15 U.S.C. § 1125(a).

### FIFTH CAUSE OF ACTION

**(Violation of N.Y. Gen. Bus. Law §§ 349(h) and 350(e) by Mars)**

86. Paragraphs 1-85, above, are re-alleged and incorporated by reference as if set forth in full.

87. Mars is liable to Paragon, both directly and indirectly and jointly, for multiple violations of N.Y. Gen. Bus. Law §§ 349(h) and 350(e).

### SIXTH CAUSE OF ACTION

### (Unfair Competition Under New York Law by Mars)

88. Paragraphs 1-87, above, are re-alleged and incorporated by reference as if set forth in full.

89. Mars is liable to Paragon, directly and indirectly, for unfair competition under New York common law.

WHEREFORE, Paragon prays that the court:

(i) Declare, adjudge, and decree that Mars and TNC are liable to Paragon for violation of 15 U.S.C. § 1125(a), N.Y. Gen. Bus. Law §§ 349(h) and 350(e), and New York common law;

(ii) Grant preliminary and permanent injunctions requiring Mars and TNC to halt further use of the "**#1 Vet Recommended Dental Chew**" and the "**#1 Vet-Recommended Dental Treats**" claims, to offer refunds to deceived purchasers of GREENIES dental dog chews, and to correct and abate prior false advertising statements, including by correction or recall of GREENIES retail packaging which bears the "**#1 Vet Recommended Dental Chew**";

(iii) Award compensatory damages as provided by law;

(iv) Award statutory damages as provided by law;

(v) Award an accounting of profits as provided by law;

(vi) Award punitive damages as provided by law;

(vii) Declare this case exceptional and award Paragon its reasonable attorneys' fees and costs; and

(viii) Award Paragon such other and further relief as the Court may deem just and proper.

Dated: September 23, 2015

                HUGHES HUBBARD & REED LLP

                By: _____
                    James W. Dabney
                    Natasha N. Reed
                    Mitchell Epner
                    Emma L. Baratta
                    Nathaniel L. Fintz
                One Battery Park Plaza
                New York, New York 10004
                (212) 837-6000

                Attorneys for Plaintiff
                Paragon Pet Products Europe B.V.

66698068

Dated: September 23, 2015

                                    HUGHES HUBBARD & REED LLP

                                    By: _____
                                          James W. Dabney
                                          Natasha N. Reed
                                          Mitchell Epner
                                          Emma L. Baratta
                                          Nathaniel L. Fintz
                                  One Battery Park Plaza
                                  New York, New York 10004
                                  (212) 837-6000

                                  Attorneys for Plaintiff
                                  Paragon Pet Products Europe B.V.

66698068