UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
                                    :

PARAGON PET PRODUCTS EUROPE B.V.,    :
                                    :

              Plaintiff,        :
                v.                  :        Civil Action No. 15-cv-5520
                                    :

MARS, INC. and THE NUTRO COMPANY,    :
                                    :

             Defendants.      :
                                    :
------------------------------------------------------------- x

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION
## TO DISMISS FIRST AMENDED AND SUPPLEMENTAL COMPLAINT

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
(212) 837-6000

Attorneys for Plaintiff
Paragon Pet Products Europe B.V.

James W. Dabney
Natasha N. Reed
Mitchell Epner
Emma L. Baratta
Nathaniel L. Fintz

    *Of Counsel*

October 14, 2015

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORTIES ...................................................................................... ii

INTRODUCTION ...................................................................................................... 1

FACTS ....................................................................................................................... 2

ARGUMENT ............................................................................................................. 5

      I.     THE COMPLAINT ALLEGES FACTS WHICH SUBJECT
           MARS TO LIABILITY UNDER 15 U.S.C. § 1125(A) ........................................ 5

      II.    THE COMPLAINT ALLEGES FACTS WHICH SUBJECT
           DEFENDANTS TO LIABILITY UNDER N.Y. GBL §§ 349 AND 350. ........... 11

      III.   THE COMPLAINT ALLEGES FACTS WHICH SUBJECT
           DEFENDANTS TO LIABILITY FOR UNFAIR COMPETITION
           UNDER NEW YORK COMMON LAW. ............................................................ 16

CONCLUSION ........................................................................................................ 19

i

## <u>TABLE OF AUTHORTIES</u>

**Cases**                                                                                                     **Page(s)**

*1-800 Contacts, Inc. v. Lens.com, Inc.*,
   722 F.3d 1229 (10th Cir. 2013) .........................................................................................9

*Arista Records LLC v. Doe 3*,
   604 F.3d 110 (2d Cir. 2010).............................................................................................11

*Astroworks, Inc. v. Astroexhibit, Inc.*,
   257 F. Supp. 2d 609 (S.D.N.Y. 2003).............................................................................18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 556 (2007)...................................................................................................5

*Bichler v. Eli Lilly & Co.*,
   436 N.E.2d 182 (1982).......................................................................................................9

*Capitol Records, Inc. v. N.Y. Wings Digital Corp.*,
   218 F. Supp. 2d 280 (E.D.N.Y. 2002) ...........................................................................14

*City of New York v. Smokes-Spirits.com, Inc.*,
   911 N.E.2d 834 (N.Y. 2009)...........................................................................................12

*Construction Technology, Inc. v. Lockformer Co. Inc.*,
   704 F. Supp. 1212 (S.D.N.Y. 1989)...............................................................................15

*Copperweld Corp. v. Independence Tube Inc.*,
   467 U.S. 752 (1984).........................................................................................................10

*Downes v. Culbertson*,
   275 N.Y.S. 233 (Sup. Ct. 1933)......................................................................................17

*Duty Free Ams., Inc. v. Estee Lauder Cos.*,
   797 F.3d 1248 (11th Cir. 2015) ........................................................................................8

*Electrolux Corp. v. Val-Worth, Inc.*,
   161 N.E.2d 197 (1959)....................................................................................................17

*Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*,
   797 F. 3d 229 (2d Cir. 2015)............................................................................................2

*Fahmy v. Live Nation Entm't, Inc.*,
   No. 2:15-CV-01158-CAS,
   2015 WL 3617040 (C.D. Cal. June 8, 2015) ...................................................................9

*In re Frito-Lay North America, Inc. All Natural Litigation*,
   No. 12-MD-2413,
   2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)......................................................11

*Gaidon v. Guardian Life Ins. of Am.*,
   725 N.E.2d 598 (N.Y. 1999).................................................................................12

*Galiano v. Fid. Nat'l Title Ins. Co.*,
   684 F.3d 309 (2d Cir. 2012).................................................................................2

*Gucci Am. Inc. v. Duty Free Apparel, Ltd.*,
   277 F. Supp. 2d 269 (S.D.N.Y. 2003).............................................................15, 16

*Gustavson v. Wrigley Sales Co.*,
   961 F. Supp. 2d 1100 (N.D. Cal. 2013) ...............................................................9

*H.E. Allen Mfg. Co. v. Smith*,
   229 N.Y.S. 692 (N.Y. App. Div. 1928) ..........................................................17, 18

*ITC Ltd. v. Punchgini, Inc.*
   880 N.E.2d 852 (N.Y. 2007)................................................................................16

*Karlin v. IVF Am., Inc.*,
   712 N.E.2d 662 (N.Y. 1999)...........................................................................12, 13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
   545 U.S. 913 (2005).............................................................................................9

*National Gear & Piston, Inc. v. Cummins Power Systems, LLC*,
   861 F. Supp. 2d 344 (S.D.N.Y. 2012).............................................................10, 11

*North State Autobahn, Inc. v. Progressive Insurance Group Co.*,
   953 N.Y.S.2d 96 (N.Y. App. Div 2012) ..........................................................14, 15

*Old Investors' & Trades' Corp. v. Jenkins*,
   232 N.Y.S. 213 (Sup. Ct. 1928), *aff'd*, 233 N.Y.S. 845 (N.Y. App. Div. 1929)....................18

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d
   741 (N.Y. 1995) ..................................................................................................12

*Perfect 10, Inc. v. Giganews, Inc.*,
   No. CV11-07098 (C.D. Cal. Mar. 8, 2013) .........................................................10

*R.F.M.A.S., Inc. v. Mimi So*,
   619 F. 2d Supp. 39 (S.D.N.Y. 2009) (Marrero, J.) .............................................7

*Remington Research, Inc. v. Modern Aids, Inc.*,
   170 F. Supp. 7 (S.D.N.Y. 1959)..........................................................................17

*Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co.*,
  159 N.Y.S.2d 606 (N.Y. App. Div. 1957) ...........................................................................17

*Securitron Magnalock Corp. v. Schnabolk*,
  65 F.3d 256 (2d Cir. 1995)...............................................................................................14

*Shapiro, Bernstein & Co. v. H. L. Green Co.*,
  316 F.2d 304 (2d Cir. 1963)................................................................................................9

*Shevers Ice Cream Co. v. Polar Prods. Co.*,
  194 N.Y.S. 44 (Sup. Ct. 1921) .........................................................................................17

*Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*,
  380 F.3d 126 (2d Cir. 2004)................................................................................................6

*Stutman v. Chem. Bank*,
  731 N.E.2d 608 (N.Y. 2000) ............................................................................................12

*Tiffany (NJ) Inc. v. eBay Inc.*,
  600 F.3d 93 (2d Cir. 2010)................................................................................................10

*Trachtenberg v. Dep't of Educ. of City of New York*,
  937 F. Supp. 2d 460 (S.D.N.Y. 2013)................................................................................5

*Weight Watchers Intern., Inc. v. Stouffer Corp.*,
  744 F. Supp. 1259 (S.D.N.Y. 1990)..................................................................................15

STATUTES AND RULES

15 U.S.C. § 1125(a) ....................................................................................................................2

15 U.S.C. § 1125(a)(1)................................................................................................................1

N.Y. Gen. Bus. L. § 350-e(3)....................................................................................................13

N.Y. Gen. Bus. Law § 349....................................................................................................*passim*

N.Y. Gen. Bus. Law §§ 349 and 350.............................................................................1, 13, 15

N.Y. Gen. Bus. Law § 350.........................................................................................2, 11, 12, 13

LEGISLATIVE AND ADMINISTRATIVE MATERIALS

N.Y. Dep't of Laws, Mem. To Governor, 1963 N.Y. Legis. Ann. at 105 ...................................12

Paragon Pet Products Europe B.V. ("Paragon") respectfully submits this memorandum in opposition to Defendants' motion filed October 7, 2015 (Docket Item ["D.I."] 99) for an Order dismissing Causes of Action 2 through 6 of Paragon's First Amended and Supplemental Complaint (the "FAC"; D.I. 94).

## INTRODUCTION

Defendants do not dispute that the FAC states an actionable claim against defendant The Nutro Company ("TNC") for violation of 15 U.S.C. § 1125(a)(1).  At issue now is (i) whether the FAC states any actionable claim against Mars, Inc. ("Mars") under 15 U.S.C. § 1125(a)(1) (Fourth Cause of Action), (ii) whether the FAC states any actionable claim against either Defendant under N.Y. Gen. Bus. Law §§ 349 and 350 (Second and Fifth Causes of Action); and (iii) whether the FAC states any actionable claim against either Defendant under New York common law (Third and Sixth Causes of Action).

As set forth below, the allegations of Paragon's Fourth Cause of Action are plainly sufficient to state an actionable claim against Mars.  The FAC alleges that (i) "Mars developed, formulated, patented, and owns the canine dental chew product that TNC markets and sells under the GREENIES trademark" (FAC ¶ 39); (ii) "[b]etween 2011 and the present Mars has had actual knowledge of, or was willfully blind to, the falsity of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet Recommended Dental Treat**" statements in GREENIES commercial advertising" (FAC ¶ 83); and (iii) "[b]etween 2011 and the present Mars has given substantial assistance to TNC's use and continued use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet Recommended Dental Treat**" statements" (FAC ¶ 84), which assistance has included publicly vouching for the veracity of GREENIES product descriptions (FAC ¶ 74) and continuing to furnish TNC with licenses under Mars-owned patents (FAC ¶¶ 39-42) despite knowledge that the licensed product was being falsely advertised.  Mars's involvement in the false advertising here

1

goes far beyond mere possession of legal rights to vote the shares of TNC, and is far greater than that which has been held sufficient in past cases to support liability under 15 U.S.C. § 1125(a). Part I, *infra*.

With regard to Paragon's claims invoking New York state statutory law, Defendants' motion ignores controlling precedent of New York state courts and takes an untenably narrow view of what qualifies as "[d]eceptive acts or practices in the conduct of *any* business, trade or commerce," N.Y. Gen. Bus. Law § 349 (emphasis added), what qualifies as "[f]alse advertising in the conduct of *any* business, trade or commerce."  N.Y. Gen. Bus. Law § 350 (emphasis added). Part II, *infra*.

With regard to Paragon's claims invoking New York common law, Defendants' motion ignores controlling precedent of New York state courts under which a competitor's making knowingly false statements designed to divert trade is a well-recognized species of "unfair competition" under New York common law.  (Part III, *infra*).

## FACTS

In deciding whether a complaint states a claim upon which relief can be granted, the Court must "construe the Complaint liberally, accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences in plaintiff['s] favor."  *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012).  This exercise "involves nothing more than reading the allegations in the complaint and deciding whether those allegations state a claim."  *Espinoza ex rel. JPMorgan Chase & Co. v. Dimon*, 797 F.3d 229, 231 (2d Cir. 2015).

In this case, the FAC alleges facts from which it can reasonably be inferred that Mars employees or agents have personally participated in decisions which have resulted in the appearance of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet Recommended Dental Treat**" statements on GREENIES retail product packaging and in GREENIES consumer television ad-

2

vertising, and that but for Mars's active support and assistance, TNC would have no ability to market or sell GREENIES canine dental chews at all.

According to the FAC, Mars purchased the GREENIES canine dental chew business in 2006.  FAC ¶ 32.  At that time, the GREENIES canine dental chew product was the subject of negative publicity and multiple lawsuits alleging that the product was a choking hazard and killing dogs.  FAC ¶ 66.  A CNN investigation uncovered forty (40) cases between 2003 and 2006 in which a veterinarian had to extract a Greenie from a dog after the treat became lodged either in the animal's esophagus or intestine; in thirteen (13) cases, the pet died.  FAC ¶ 67.

After buying the GREENIES brand name and business in April 2006, Mars undertook to re-design and re-formulate the product.  FAC ¶ 68.  In June 2006, attorneys representing Mars filed a patent application which matured as the Mars-owned U.S. Patent No. D587,428 (the "Mars '428 Patent").  FAC ¶ 69.  The Mars '428 Patent discloses and claims the design of the Mars re-designed and re-formulated GREENIES canine dental chew product which TNC markets and sells.  FAC ¶ 41.  The Mars '428 Patent states that "The 'GREENIES' logo that forms a part of one embodiment of the claimed edible pet chew is a trademark of Mars, Incorporated." FAC ¶ 42.  The Mars '428 Patent number is displayed in GREENIES television advertising. FAC ¶ 40.

In June 2007, attorneys representing Mars filed a patent application which matured as the Mars-owned U.S. Patent No. 7,497,189 (the "Mars '189 Patent").  FAC ¶ 70.  The Mars '189 Patent also discloses and claims the configuration of the current GREENIES product whose advertising is the subject matter of this action.  *Id*.

Between 2006 and 2008, Mars was the sole member of the limited liability company, S&M NuTec LLC ("S&M NuTec") which operated the GREENIES business.  FAC ¶ 33.  Dur-

ing this period Mars acquired the business and NUTRO brand of defendant TNC, a company which prior to 2007 had had no involvement in the GREENIES business.  FAC ¶ 34.  In late 2008, as part of an effort to rehabilitate the GREENIES brand, Mars terminated the existence of S&M NuTec and contributed the Mars-owned GREENIES business to TNC, whose reputation had not been tarnished as had that of S&M NuTec.  FAC ¶¶ 35-36, 71.  Mars continues, however, to be the beneficial owner of the GREENIES business and brand name (FAC ¶ 37) and currently controls and directs the operations of TNC as it previously controlled the operations of S&M NuTec between 2006 and 2008.  FAC ¶ 38.

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████

Despite having actual knowledge that GREENIES canine dental chews were not the "**#1 Vet Recommended Dental Chew**" (FAC ¶¶ 12, 16, 83), one or more Mars employees or agents approved GREENIES product packaging and television advertising which falsely described the product as purportedly being the "**#1 Vet Recommended Dental Chew**" and the "**#1 Vet Recommended Dental Treat**".  FAC ¶¶ 30-31, 73-79.  Mars has publicly identified GREENIES as a "Mars" brand distributed by "Mars Petcare" (FAC ¶ 73) and has publicly vouched for the veracity of GREENIES product advertising.  FAC ¶ 74.  Mars has itself, under color of the MARS

brand name (see Exhibit 1 hereto),[1] asserted that "[t]he GREENIES® Brands include the number-one veterinarian-recommended canine and feline dental treats available in pet specialty stores." FAC ¶ 75. And Mars agents are alleged to have directly participated in a scheme to deceive CBS and keep false GREENIES advertising on the air despite knowledge of the falsity. FAC ¶¶ 28-31.

Mars developed, formulated, patented, and owns the canine dental chew product that TNC markets under the GREENIES trademark. FAC ¶ 39. Mars has continued to license TNC to practice the Mars '428 Patent and the Mars '189 Patent despite having actual knowledge that the licensed products are being falsely advertised. FAC ¶ 78. Mars has funded and supported continued use of the "**#1 Vet Recommended Dental Chew**" and "**#1 Vet Recommended Dental Treat**" claims (*id.*).

## ARGUMENT

## I.    THE COMPLAINT ALLEGES FACTS WHICH SUBJECT MARS TO LIABILITY UNDER 15 U.S.C. § 1125(A)

As noted above, the Defendants do not dispute that the FAC alleges a primary violation of 15 U.S.C. § 1125(a)(1) by TNC. On this branch of Defendants' motion, the only question is whether the FAC alleges "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence'"[2] that Mars "knowingly play[ed] a significant role in accomplishing the unlawful purpose." *Stix Prods., Inc. v. United Merchants & Mfrs., Inc.*, 295 F. Supp. 479, 500 (S.D.N.Y. 1968) (Weinfeld, J.) (citing authorities) (imposing liability).

---

[1] Exhibit 3 to Defendants' motion is a misleading cropped copy of the web page in question and omits the MARS brand name at the top. The complete webpage is available at the URL http://www.mars.com/global/press-center/press-list/news-releases.aspx?siteid=94&id=3115 and a true copy is attached hereto as Exhibit 1.
[2] *Trachtenberg v. Dep't of Educ. of City of New York*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 556 (2007)).

In case after case, the Second Circuit and courts in this Circuit have held that liability under 15 U.S.C. § 1125(a) can be imposed on actors whose role in furthering primary violations of the statute was far less extensive than is the role that Mars is alleged to have played here.  In *Societe des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126 (2d Cir. 2004), one of the issues was whether the owner of certain hotel properties could be held contributorily liable for violations of 15 U.S.C. § 1125 that its contractor/property manager had allegedly committed.  The plaintiff there alleged that "LaSalle [the owner] induced Starwood [property manager] to violate the Lanham Act 'by intentionally directing, approving, authorizing, drafting and/or editing the Starwood Worldwide Directories.'"  *Id*. at 132-33.  The Second Circuit held that the plaintiff had "stated claims for contributory liability under the Lanham act and the District Court erred in dismissing them."  *Id*. at 133.  The FAC here provides at least as much factual basis for imposing contributory liability on Mars as did the pleading upheld in *Meridien*.

In *Polymer Technology Corp. v. Mimran*, 975 F.2d 58 (2d Cir. 1992), the Second Circuit reversed a district court's denial of preliminary injunctive relief against a defendant's sale of ophthalmic products to a wholesaler who allegedly would have had to re-package the product in an unlawful way.  The Court endorsed the traditional rule that: "A distributor who intentionally induces another to infringe a trademark, or who continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, is contributorially [sic] liable for any injury."  *Id*. at 64 (citing *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982)).  *Accord Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 104-05 (2d Cir. 2010).  Mars's provision of patent rights to TNC falls squarely within this rule.

In *Gucci America, Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228 (S.D.N.Y. 2010) (Baer, J.), the district court held that providers of credit card processing services could be

held liable for trademark infringement committed by their customer, where the defendants were alleged to have knowledge of the customer's likely violations and the customer's website "was functionally dependent on" the defendants' "credit card processing services." *Id*. at 249-53. Similarly in *Stix,* a contract manufacturer was held contributorily liable for trademark infringement committed by its customer, where the manufacturer provided the primary violator with "extensive financial and technical assistance" and was aware "fully aware of the trademark implications of" its customer's conduct. 295 F. Supp. at 500.

In *R.F.M.A.S., Inc. v. Mimi So*, 619 F. 2d Supp. 39 (S.D.N.Y. 2009) (Marrero, J.), the Court restated and applied the general rule that: "all those who knowingly play a significant role in furthering trade dress infringement are liable as contributing parties." *Id*. at 84. In that case, the defendants were 40% owners of a firm ("MSI") that allegedly violated 15 U.S.C. § 1125(a). The court denied a motion for summary judgment where the defendants were alleged to have had knowledge of MSI's plan to launch an allegedly infringing jewelry line and the evidence was sufficient to support an inference that at least one of defendant's representatives "suggested that So [MSI's principal] infringe RFMAS's trade dress, encouraged her to infringe it, or was at least willfully blind in not stopping the infringing use of the trade dress." *Id*. at 85. The Court further noted that there was a dispute of fact over "the amount and degree of monitoring and control" that the moving defendants had over MSI. *Id*.

Paragon's Fourth Cause of Action invokes the same statute, 15 U.S.C. § 1125(a), as was at issue in the above and numerous other cases that could be cited to the same effect. Defendants' suggestion that a different rule should apply to violations of 15 U.S.C. § 1125(a) which involve false *descriptions* of a product, as opposed to violations which involve false *designations of origin* of a product, has no basis in Second Circuit precedent and is also unsupported by the

out-of-circuit case that Defendants principally rely on, *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1274 (11th Cir. 2015).

In *Duty Free*, the Eleventh Circuit held that "a plaintiff may bring a claim for contributory false advertising under §43(a) of the Lanham Act."  797 F.3d at 1277.  The Eleventh Circuit held that such a claim was to be judged according to ordinary standards applying to secondary liability claims under the Lanham Act.  *Id.* at 1277-78 ("Analogies from trademark infringement, in which contributory liability is more developed, can be instructive").  The court held that "there could be circumstances under which the provision of a necessary product or service, without which the false advertising would not be possible, could support a theory of contributory liability."  *Id.*  Mars's licensing of patent rights to TNC falls squarely within this rule.

*Duty Free* also set forth a framework (which the FAC certainly meets) for determining whether a contributory actor had the requisite mental state to be liable:

> In determining whether a plaintiff has adequately alleged facts to support such a claim, we look to whether the complaint suggests a plausible inference of knowing or intentional participation, examining "the nature and extent of the communication" between the third party and the defendant regarding the false advertising; "whether or not the [defendant] explicitly or implicitly encouraged" the false advertising; whether the false advertising "is serious and widespread," making it more likely that the defendant "kn[ew] about and condone[d] the acts"; and whether the defendant engaged in "bad faith refusal to exercise a clear contractual power to halt" the false advertising.

*Id.* at 1278.

The answer to each of the *Duty Free* questions here is "Yes."  The FAC suggests a plausible inference of "knowing and intentional participation" by Mars in the **#1 Vet Recommended**" claims as set forth above.

Mars is also subject to the well-settled federal common law rule that: "One . . . infringes vicariously by profiting from direct infringement while declining to exercise a right to stop or

limit it." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) (citing *Shapiro, Bernstein & Co. v. H. L. Green Co.,* 316 F.2d 304, 308 (2d Cir. 1963) (store owner held liable for wrongful conduct of in-store concessionaire). Mars's connection to the false advertising here is far closer than was that of the store owner held liability for its concessionaire's wrongful conduct in *Shapiro, Bernstein. See also 1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1252, 1254 (10th Cir. 2013) (Defendant's failure to order its subsidiaries to cease infringing ads once it learned of them could constitute contributory infringement); *Fahmy v. Live Nation Entm't, Inc.*, No. 2:15-CV-01158-CAS, 2015 WL 3617040, at *8 (C.D. Cal. June 8, 2015) (concert promoter could be held liable for infringements committed by performing artists).

Mars is also subject to the broad joint tortfeasor doctrine stated and applied in *Bichler v. Eli Lilly & Co.*, 436 N.E.2d 182, 186 (N.Y. 1982) ("[a]ll those who, in pursuance of a common plan or design to commit a tortious act, actively take part in it, or further it by cooperation or request, or who lend aid or encouragement to the wrongdoer, or ratify and adopt his acts done for their benefit, are equally liable with him.") (quoting W. Prosser, Prosser on Torts at 292 (4th ed. 1971)). This description easily describes the relationship between Mars and the actors and business unit whose name appears on the packaging of GREENIES® dental chews.

The case decisions cited by Mars (D.I. 99 at 12-15) each involved circumstances that were very different from those present here. In *Gustavson v. Wrigley Sales Co*., 961 F. Supp. 2d 1100 (N.D. Cal. 2013), the complaint apparently did not allege that Mars was "involved in producing or selling" the products in question. *Id*. at 1132. Here, by contrast, the complaint alleges that Mars is deeply involved in both producing and selling GREENIES® dental chews, including by controlling and licensing the patented design of the product itself (D.I. 94 at ¶ 39), by advertising GREENIES® as a Mars-owned brand of product whose descriptions are to be trusted be-

cause Mars is supposedly such a trustworthy company (D.I. 94 at ¶ 71, 73, 75), and by directly participating in and approving decisions to use the "**#1 Vet Recommended Dental Chew**" claim. (D.I. 94 at ¶¶ 28-31, 72, 75).

In *Perfect 10, Inc. v. Giganews, Inc.*, No. CV11-07098 (C.D. Cal. Mar. 8, 2013), the question was whether a complaint adequately stated claims for direct, contributory, or vicarious copyright infringement against firms which provided electronic access to USENET bulletin boards whose users posted allegedly infringing photographs. The *Perfect 10* decision ironically supports Paragon's position on this motion, not Mars's position. *Perfect 10* held that the plaintiff's complaint stated actionable claims for contributory and vicarious infringement where the defendant had been placed on notice of specific infringements and had failed to take remedial actions  *Id*. at *10-*13. In this respect, the *Perfect 10* decision followed the reasoning of *Tiffany (NJ) Inc.  v. eBay Inc*., 600 F.3d 93 (2d Cir. 2010), wherein the Second Circuit held that indirect liability for trademark infringement could be imposed if an actor "suppl[ied] its service to individuals who it knew or had reason to know were selling" infringing products. *Id*. at 109. The complaint here supports an inference that Mars at all relevant times knew of both the use and the falsity of the "**#1 Vet Recommended Dental Chew**" claim.

In *National Gear & Piston, Inc. v. Cummins Power Systems, LLC*, 861 F. Supp. 2d 344 (S.D.N.Y. 2012), also cited by Mars, the question was whether a parent corporation could be held to have colluded with its subsidiary in an antitrust law violation. This theory was in tension with antitrust doctrine holding that parent and subsidiary corporations are incapable of conspiring with one another for antitrust purposes. *See Copperweld Corp. v. Independence Tube Inc*., 467 U.S. 752, 771 (1984) ("A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or

determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal 'agreement,' the subsidiary acts for the benefit of the parent, its sole shareholder."). *National Gear* did not involve facts or claims remotely analogous to those here.

*In re Frito-Lay North America, Inc. All Natural Litigation*, No. 12-MD-2413, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013), is also factually distinguishable. In that case, the complaint apparently did not allege any facts that suggested that PepsiCo, Inc. or its agents had participated in or contributed to use of alleged false advertising of certain Frito-Lay products. The plaintiffs there apparently relied in part on an advertisement in which Frito-Lay, not PepsiCo, was "the speaker." *Id*. at *5. Here, in contrast, the complaint refers to advertisements in which Mars clearly is "the speaker" and lends its corporate credibility to the NUTRO® and GREENIES® brands. "The *Twombly* plausibility standard . . . . does not prevent a plaintiff from 'pleading facts "upon information and belief" where the facts are peculiarly within the possession and control of the defendant.'" *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted). Paragon has more than amply pleaded facts that raise a reasonable expectation that discovery will reveal evidence of Mars's active participation in and support of the subject false advertising.

## II.    THE COMPLAINT ALLEGES FACTS WHICH SUBJECT DEFENDANTS TO LIABILITY UNDER N.Y. GBL §§ 349 AND 350.

Section 349 of the New York General Business Law provides: "Deceptive acts or practices in the conduct of *any* business, trade or commerce or in the furnishing of *any* service in this state are hereby declared unlawful." N.Y. Gen. Bus. Law § 349(a) (McKinney 2012) (emphasis added). Section 350 of the New York General Business Law is equally broad, prohibiting "[f]alse advertising in the conduct of *any* business, trade or commerce or in the

11

furnishing of *any* service in this state."   (Emphasis added.)   Advertising is "false" if it is "misleading in a material respect."  N.Y. Gen. Bus. Law § 350-a(1) (McKinney 2012).

"These statutes on their face apply to virtually all economic activity, and their application has been correspondingly broad."  *Karlin v. IVF Am., Inc*., 712 N.E.2d 662, 665 (N.Y. 1999). "The reach of these statutes 'provides needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State.'" *Id*. (quoting N.Y. Dep't of Law, Mem. to Governor, 1963 N.Y. Legis. Ann. at 105).

"A plaintiff under section 349 must prove three elements: first, that the challenged act or practice was consumer-oriented, second, that it was misleading in a material way, and third, that the plaintiff suffered injury as a result of the deceptive act."  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000).  *Accord City of New York v. Smokes-Spirits.com, Inc*., 911 N.E.2d 834, 838 (N.Y. 2009); *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744-45 (N.Y. 1995).  The complaint here easily satisfies these requirements.

GREENIES® dental chews are consumer products.  The "**#1 Vet Recommended Dental Chew**" claim is directed at consumers, is used in consumer television advertising and on consumer retail packaging, and is allegedly designed to mislead and deceive consumers into buying GREENIES® dental chews on the basis of a false description of the product's relative standing among veterinarians.  The deceptive advertising here is no less "consumer-oriented" than were the signature cards at issue in *Oswego* or the advertised in vitro fertilization success rates at issue in *Karlin*.  As authoritatively interpreted by the New York Court of Appeals, the phrase "consumer-oriented" means simply that a challenged act or practice is one that has "a broader impact on consumers at large," *Oswego*, 647 N.E.2d at 744, as opposed to being an act or practice whose impact is unique to the complainant.  *Id*.  *See also Gaidon v. Guardian Life*

*Ins. Co. of Am.*, 725 N.E.2d 598, 603 (N.Y. 1999) (insurance marketing practice was "consumer-oriented" as contrasted with "a private contract dispute").

In asserting that the **#1 Vet Recommended Claims** are not "consumer-oriented," Defendants urge an interpretation of GBL §§ 349 and 350 which is inconsistent with the broad text of the statutes and with controlling New York State court authority including *Karlin*.  The New York deceptive practices act would be a dead letter if the type of false advertising at issue here were held to be outside its scope as not "consumer-oriented."  The FAC specifically alleges that Defendants make their fraudulent **#1 Vet Recommended Claims** to influence consumers to purchase GREENIES and to overcome GREENIES' prior reputation as a lethal hazard to dogs.  The only manner in which #1 Vet Recommended Claims could be considered less than "consumer-oriented" would be if the Court were to conclude that since dogs (rather than the people who purchase GREENIES) actually consume the product, even outlandishly fraudulent claims cannot be considered "consumer-oriented."  Defendants cite no precedent for such a sweeping rule.

Nor is there any basis in the statutory text for Defendants' suggestion that Paragon's alleged injury in this case cannot be redressed under GBL §§ 349 and 350.  Section 349 provides a private right of action to "any person who has been injured by reason of any violation of this section."  N.Y. Gen. Bus. L. § 349(h).  Section 350 provides a private right of action to "[a]ny person who has been injured by reason of any violation of section three hundred fifty."  N.Y. Gen. Bus. L. § 350-e(3).  The statutes require "injury," period.  The statutes include no restriction of the private rights of action to plaintiffs who sustain a particular type of injury or violations that cause particular types of consumer injury.  Here, the injury to Paragon is plain on its face – by making fraudulent claims to be the "**#1 Vet Recommended Dental Chew**" and "**#1**

**Vet Recommended Dental Treat,**" Defendants overcome consumers' fear of GREENIES' reputation for danger and garner sales that would otherwise go to Paragon's products.

"[C]ompetitors . . . have standing to bring a claim under this [statute] . . . so long as *some harm* to the public at large is at issue." *Capitol Records, Inc. v. N.Y. Wings Digital Corp.,* 218 F. Supp. 2d 280, 286 (E.D.N.Y. 2002) (emphasis added) (internal citations and quotation marks omitted).  So for example, in *North State Autobahn, Inc. v. Progressive Insurance Group Co*., 953 N.Y.S.2d 96 (N.Y. App. Div. 2012), the plaintiffs operated an automobile repair shop and alleged that the defendant insurer had made false statements to consumers as to the plaintiffs' workmanship, price, timeliness, and character, which allegedly resulted in consumers seeking repairs from other shops.  The plaintiffs claimed economic loss in the form of lost business sales. In holding that the plaintiffs rightly invoked GBL § 349(h), the Appellate Division rejected the type of argument that Mars makes here and held: "Inasmuch as we conclude that the plaintiffs have sufficiently alleged that they were directly injured by reason of conduct rendered unlawful by section 349(a), we find no reason to judicially graft an additional requirement onto the statute so as to deprive them of standing based solely on their role in the consumer transaction."  953 N.Y.S.2d at 107.  It was enough, the court held, that the defendant's allegedly false statements misled consumers to switch their business away from the plaintiffs.

The Second Circuit held in *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) that circumstances far less compelling than those presented here constituted sufficient consumer orientation of a false statement to allow recovery under Section 349.  "Corporate competitors now have standing to bring a claim under [Section 349] so long as some harm to the public at large is at issue."  *Id.* at 264 (internal citation omitted).  In *Securitron*, one competing lock company falsely represented that a competing lock company had, among other things, been

14

rejected for an Underwriter's Laboratories seal of approval.  The Second Circuit held that this misconduct was sufficiently consumer-oriented to provide standing to the competing locksmith, because consumers often relied upon the UL seal-of-approval in making choices as to purchases. The circumstances here are far more compelling.  ████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████.  Numerous other courts have rejected Defendants' crabbed reading of Section 349 and upheld claims brought by competitors under Section 349 for "public harm" when the underlying wrong touched upon the marketing of goods to the public.  *Weight Watchers Intern., Inc. v. Stouffer Corp.*, 744 F. Supp. 1259, 1284-85 (S.D.N.Y. 1990) (finding sufficient harm to public to assert claim under Section 349 for claim by Weight Watchers that Stouffer's Lean Cuisine "fit into" the Weight Watchers program – "the false advertising involving diet and food that Stouffer allegedly conducted would involve public harm if proved"); *Construction Technology, Inc. v. Lockformer Co. Inc.*, 704 F. Supp. 1212, 1222 (S.D.N.Y. 1989) ("Here, plaintiff claims that these defendants engaged in false comparative advertising, a matter certainly affecting the public at large.").

Paragon here alleges that "[t]he GREENIES advertising statement, "**#1 Vet Recommended Dental Chew**", has unfairly disadvantaged Paragon in competition for sales of dental dog chews in New York and this district."  D.I. 3 ¶ 24.  That is the same type of injury as the *North State* plaintiff alleged.  The controlling law on GBL §§ 349 and 350 is that issued by the New York Court of Appeals, and that law supports Paragon's complaint here.

Defendants' reliance upon *Gucci Am. Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) for the purported rule that "courts have found that trademark in-

fringement actions 'reflect a public harm that is too insubstantial to satisfy the pleading require-ments of Section 349'" [D.I. 99 at 16] is sorely misplaced.  *Gucci* does not stand for the proposi-tion that a Lanham Act violation can never also be a predicate for a Section 349 claim.  Rather, in that case a trademark holder refused to exchange goods that did not have a receipt from an au-thorized retailer as "not authentic" notwithstanding the fact that the goods were authentic (albeit purchased through an unauthorized supplier) without a receipt – allegedly in an attempt to squelch sales of authorized goods from unauthorized retailers – and the only alleged harm was "(1) lost profits from items that are returned to DFA [the Section 349 plaintiff] who allegedly had been told by Gucci employees that their goods are not authentic; and (2) a general loss of good will from consumers who may hear through word-of-mouth that DFA's goods are not au-thentic".  The Court held that there was no basis for a claim under Section 349, because the only alleged harm was to DFA (the competitor) and not to Gucci's customers. *Id.* at 274.  Here, by contrast, the FAC alleges that consumers are harmed by being duped into buying GREENIES in the false belief that they are purchasing the "**#1 Vet Recommended Dental Chew**" – and that Paragon is also harmed by those false statements because it loses sales of its products as a result of those diverted sales.

## III.  THE COMPLAINT ALLEGES FACTS WHICH SUBJECT DEFENDANTS TO LIABILITY FOR UNFAIR COMPETITION UNDER NEW YORK COMMON LAW.

Based on dictum in *ITC Ltd. v. Punchgini*, *Inc.* 880 N.E.2d 852 (N.Y. 2007),[3] Defendants assert that there supposedly are only two types of business behaviors that can constitute "unfair competition" under New York common law, "palming off" and "misappropriation" (D.I. 99 at 17

---

[3] The *ITC* decision addressed two certified questions from the Second Circuit concerning the "famous marks" doctrine and an overseas plaintiff seeking to enjoin use of a restaurant name.

– 19); and from this false premise, Defendants assert that Paragon's third and sixth claims should be dismissed because they do allege "palming off" or "misappropriation."

In fact, the New York Court of Appeals has noted that there is an "incalculable variety of illegal commercial practices denominated as unfair competition" which "is proportionate to the unlimited ingenuity that overreaching entrepreneurs and trade pirates put to use." *Electrolux Corp. v. Val-Worth, Inc*., 161 N.E.2d 197, 204 (N.Y. 1959) (quoting *Ronson Art Metal Works, Inc. v. Gibson Lighter Mfg. Co*., 159 N.Y.S.2d 606, 609 (N.Y. App. Div. 1957)).  And among the oldest and most classic forms of unfair competition is the use of false or misleading statements to prospective buyers as a means of inducing them to buy a defendant's goods, or not to buy a plaintiff's goods, by means of deception.  *See, e.g., Remington Research, Inc. v. Modern Aids, Inc.,* 170 F. Supp. 7, 9-11 (S.D.N.Y. 1959) (injunction granted against competitor attempt to create a false impression that rival's advertisement had been adjudged to infringe a copyright held by the defendant; the plaintiff had made "a clear and convincing showing of unfair competition on the part of defendant"); *Downes v. Culbertson*, 275 N.Y.S. 233, 243-44 (Sup. Ct. 1933) (injunction granted against competitor advertisements stating it was the only "authorized" source of a certain bridge self-teacher; "such use is unfair and should be enjoined"); *Shevers Ice Cream Co. v. Polar Prods. Co*., 194 N.Y.S. 44, 46 (Sup. Ct. 1921) (injunction granted against competitor statements which falsely described quality of plaintiff's products; "[t]he false statements intentionally made by defendants concerning the plaintiff's output constitute unfair competition").

The principle applied in the above-cited cases is very broad and plainly reaches the false and deceptive advertising complained of here.  In *H.E. Allen Mfg. Co. v. Smith*, 229 N.Y.S. 692 (N.Y. App. Div. 1928), another case in which a competitor had used deceptive practices (but not "palming off" or "misappropriation") to win business as the plaintiff's expense, the court noted:

> Actions for unfair competition are not now limited to 'passing off' cases. . . . Each case must depend upon its own facts, but where it is clearly established that an attempt is being made by one person to get the business of another by any means that involves fraud or deceit, a court of equity will protect the honest trader and restrain a dishonest one.

229 N.Y.S. at 697-98.

So here, the complaint alleges that GREENIES' **#1 Vet Recommended Claims** are literally false and have been used in bad faith and with specific intent to mislead and deceive consumers. ██████████████, 51-52, 74, 77 and 78.  These allegations invoke the principle quoted above and plainly bring Defendants' conduct within the universe of deceptive business practices that New York common law has long outlawed.  *See also Old Investors' & Traders' Corp. v. Jenkins*, 232 N.Y.S. 213 (Sup. Ct. 1928), *aff'd*, 233 N.Y.S. 845 (N.Y. App. Div. 1929).  "[U]nfair competition may take many forms…the pivotal question is always the same: whether the conduct complained of is fair or unfair."  *Astroworks, Inc. v. Astroexhibit, Inc.*, 257 F. Supp. 2d 609, 619 (S.D.N.Y. 2003) (denying motion to dismiss New York unfair competition claim) (internal citations and quotation marks omitted).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss the First Amended and

Supplemental Complaint for alleged failure to state a claim on which relief can be granted should

be denied.

Dated:       New York, New York
             October 14, 2015

                                        Respectfully submitted,

                                        HUGHES HUBBARD & REED LLP


                                        By ____/s/ James W. Dabney____
                                               James W. Dabney
                                               Natasha N. Reed
                                               Mitchell Epner
                                               Emma L. Baratta
                                               Nathaniel L. Fintz

                                        One Battery Park Plaza
                                        New York, New York 10004-1482
                                        (212) 837-6000

                                        Attorneys for Plaintiff
                                        Paragon Pet Products Europe B.V.

66810956

19